## LINK v. SHELDON et al.

### (Supreme Court, General Term, Fourth Department. April, 1892.)

**1. MALPRACTICE—EVIDENCE—EXCLAMATIONS OF PAIN.**
　　In an action for malpractice in negligently setting the broken arm of plaintiff, a child 12 years old, evidence of his exclamations of pain, made during the time defendants had charge of him, and concerning which they were informed, is competent.

**2. SAME—EXAMINATION OF WITNESS—RESPONSIVE ANSWERS.**
　　Where a witness was asked to state the proper treatment of a "Colles fracture," including the subject of splints, and he replies that there are several different theories and methods of practice in regard to this fracture, and that, if he was told which method was intended, he would state the proper treatment, the answer was properly stricken out as not responsive to the question.

**8. SAME—OPINION EVIDENCE.**
　　Where defendants claimed that they were prevented by the boy's parents from redressing the arm on Monday night, the court properly refused to permit an expert witness, who had no personal knowledge of the case, to testify whether he would trace any of the results which he had heard testified about to the lack of redressing at that time, since it would require the witness to pass on the evidence. *People* v. *McElvaine*, 24 N. E. Rep. 465, 121 N. Y. 250, followed.

**4. SAME—EXPERTS.**
　　Where the issue was whether the boy fell on the palm of his hand, thereby producing a "Colles fracture," or on the back of his hand, producing a different displacement, the court properly refused to allow an expert witness to state how an ordinary "Colles fracture" usually occurred in young people.

**5. SAME—OPINION DERIVED FROM MEDICAL BOOKS.**
　　The court properly refused to permit an expert witness to state whether his opinion of the proper treatment was sustained by the authorities, since the question indirectly called for statements from medical books. *In re Mason*, (Sup.) 14 N. Y. Supp. 434, followed.

**6. SAME—PROOF OF SKILL—SPECIFIC ACTS.**
　　Where one of defendants testified that, during his practice, he had treated 25 or 30 cases of "Colles' fracture," the court properly refused to permit him to state what the results were, as specific acts are not competent on the question of general reputation as to skill.

**7. SAME—INSTRUCTIONS—ERRORS CURED.**
　　It was error to refuse to charge, at defendants' request, that if "the stiffness of the thumb resulted from its changed position, from which the defendants left it, then the defendants are not liable," the error was cured where the court subsequently charged that if any part of the injuries complained of were caused by the

acts or neglect of plaintiff, his parents, or those who treated him after defendants ceased to do so, there could be no recovery.

**8. SAME.**

Where the court refused to charge that "plaintiff could not recover if the results complained of were not wholly caused by what defendants did or failed to do," defendants cannot complain, where the court subsequently charged that "if any part of the injuries complained of were caused by defendants, and a part was caused by the fault of plaintiff, his parents, or those who treated him after defendants ceased to do so, plaintiff could not recover."

**9. SAME.**

Where the court refused to charge that "if the contusion or injury on the back of the hand produced an inflammation in the sheaths of the tendons, which spread to the adjacent parts, and that such contusion was an adequate cause for the inflammation, suppuration, and stiffening which followed as a result thereof, and which do not develop at the surface for a period of from three to six days, then the injuries are the natural results of plaintiff's fall," defendants cannot complain, where the court subsequently charged that if the jury find that it is just as probable that the injury complained of was caused either by the original severe injury, or by the interference of plaintiff's parents, or by the subsequent treatment of Dr. D., as from the pretended tight bandaging, the verdict must be for defendants.

**10. SAME—FACTS ASSUMED.**

The court properly refused to give instructions which assumed that the treatment of the physician who attended plaintiff after defendants were discharged was improper.

Appeal from circuit court, Onondago county.

Action by Harry W. Link, by his guardian, against Jay W. Sheldon and another for malpractice. From judgment entered on a verdict in favor of plaintiff, and from an order denying a motion made on the minutes for a new trial, defendants appeal. Affirmed.

The evidence showed that on July 25, 1890, plaintiff, then being about 12 years old, was playing in the hay loft of a barn, and fell to the barn floor, a distance of about 11 feet; thereby breaking his right arm near the wrist. Defendants were called in to attend to it. The claim of plaintiff is that defendants so negligently, unskillfully, and improperly attended to the matter that plaintiff's hand became permanently injured and deformed.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*T. K. Fuller*, for appellants. *Goodelle & Nottingham*, for respondent.

MERWIN, J. In this case, upon the evidence, it was clearly a question of fact whether the plaintiff had sustained an injury by reason of the want of proper skill or care on the part of defendants, within the rule applicable to such cases, (*Carpenter* v. *Blake*, 10 Hun, 358,) as was also the question whether the negligence or misconduct of the plaintiff or his parents contributed to the result. The motion for a nonsuit was therefore properly denied. We have examined the cases cited by the counsel for defendants upon this subject, but find nothing that would call for a different conclusion.

It is claimed by the defendants that numerous errors, to their disadvantage, were made by the court in rulings upon evidence and in regard to requests to charge. These we will examine in detail.

1. The accident was in the forenoon of Friday, and the defendants set the limb the same forenoon. The father of the plaintiff, being upon the stand as a witness for the plaintiff, testified without objection, among other things: That on Friday night the plaintiff "was crying terribly. He said his hand pained him so he could not live through it,—pained him same as if he had it on a hot stove." That, upon the following day, he saw one of the defendants, and told him what pain the boy had been suffering. That upon the following night the boy "complained of a burning sensation. He did nothing but walk. He could not keep quiet. He walked around the house." The question was then asked, "Did he continue those complaints?" and the answer given, "Just the same,—'this burning, terrible burning, pain.'" The counsel for defendants then said, "I object to that class of evidence as incompetent, improper, and

inadmissible;" and to this the court replied, "I think the exclamations of the boy are competent in this class of cases." The objection was overruled and exception taken. This evidence related to the condition of the boy while the defendants had charge of him, and concerning which they were informed when they called to see him. The court evidently followed the rule laid down in *Hagenlocher* v. *Railroad Co.*, 99 N. Y. 136, 1 N. E. Rep. 536, where it was held that exclamations indicative of pain were competent, and proof of these was not confined to the time of the injury. *Roche* v. *Railroad Co.*, 105 N. Y. 297, 11 N. E. Rep. 630. No error is apparent. The counsel for defendants specifies two other questions upon this subject, the objections to which were overruled; but, as they were not answered, it is not important to consider them.

2. A witness for the defendants was asked by the defendants' counsel the following "*Question.* I would like to have you take the matter up,. and state to the court and jury what is the proper treatment of Colles' fracture, including the subject of splints." To this the witness made answer: "There may be half dozen different treatments of Colles' fracture with the dislocation backwards. There are half dozen theories and methods of practice with reference to this fracture. Some men have one method of treating,. some have another, and some another. If you will designate which method. you will have, I will tell you what treatment you want. There are a great. many methods." The counsel for plaintiff moved to strike out this answer,. and the court replied: "We desire his idea of the proper treatment of Colles' fracture. I think I will strike the answer out. That this is a difficult fracture to deal with, it may be assumed." Defendants excepted. The answer was not responsive to the question. Besides, the substance of the answer, as given, was afterwards fully stated by the witness.

3. Dr. Lee, an expert witness for defendants, was asked by defendants' counsel the following question: "*Question.* Would you trace any of the results which you have heard testified to by Dr. Doyle to the lack of redressing on Monday night?" This was objected to as incompetent, and immaterial, and objection sustained, and exception taken. Upon the Monday night following the accident the defendants called at the house where the plaintiff was for the purpose of redressing the arm. It was a disputed question whether the defendants were prevented from then redressing the arm by the parents. of the boy, or whether they voluntarily postponed it to the next day. Upon the morning of the next day the defendants were discharged, and Dr. Doyle then redressed the arm, and thereafter took charge of the case. He, in his. evidence, had given a description of the injury as he found it on Tuesday, and of the subsequent treatment and results up to the time of the trial. The witness. Dr. Lee had no personal knowledge of the case. He had, in answer to an hypothetical question, testified that the delay in the redressing from Friday evening to Tuesday forenoon was highly damaging to the boy. The question above· set out was then asked. It not only called upon the witness to consider the· evidence of Dr. Doyle as to the results referred to, but also the evidence of other witnesses, which the witness had heard, as to the condition of the arm, on Monday evening, and its prior treatment. In no other way could the witness judge of the effect of the lack of redressing on Monday night. The witness was therefore, in effect, asked to pass upon all the evidence upon that phase of the case. In this view the question was incompetent, within the principle laid down in *People* v. *McElvaine*, 121 N. Y. 250, 24 N. E. Rep. 465, and cases there cited.

4. The counsel for defendants asked the witness Dr. Lee the following question: "*Question.* How does it [referring to an ordinary Colles fracture] occur in young people, usually?" This, being objected to, was ruled out, and properly so. The issue was not as to how such fractures usually occurred with young people, but whether the boy fell upon the palm of his hand, thereby

producing the ordinary Colles fracture, or whether he fell upon the back of his hand, thereby producing a different kind of fracture or displacement.

5. Dr. Elsner, an expert witness for the defendants, after having given his opinion as to the proper treatment of a swelling in the palm of the hand, was asked the question: "Is this view you have just expressed sustained amply by the authorities?" This, being objected to, was ruled out. The question indirectly called for statements from medical books, and was not proper. See *In re Mason*, (Sup.) 14 N. Y. Supp. 434, and cases cited. This was upon the direct examination of the witness.

6. Dr. Elsner was also asked the question: "Do you trace the injury which now exists in that hand to tight bandaging?" This, being objected to as incompetent and immaterial, was ruled out. The question, in substance, was repeated, but with an hypothetical basis, and was answered. This gave to the defendants all they were entitled to have.

7. The defendant Sheldon, when called in his own behalf, testified that in his practice he had treated 25 or 30 cases of Colles' fracture. He was then asked the question: "And with what results?" This was objected to by plaintiff's counsel as incompetent and immaterial, and objection sustained. If the results in each case that witness had treated could be gone into upon the one side, they could be upon the other, and thus irrelevant issues be raised. Upon the question of general reputation as to skill, specific acts would not be competent. *Carpenter* v. *Blake*, 10 Hun, 360. In the case cited, Judge TALCOTT says: "The defendant cannot be supposed to be prepared to prove the facts in regard to all cases which had theretofore occurred in his practice, and the inevitable effect of allowing such evidence would be to introduce before the jury a multitude of collateral issues, and thus tend to obscure and distract attention from the real issue in the case on trial." It may be, as said by Judge MULLIN in *Carpenter* v. *Blake*, 60 Barb. 518, that the fact that a physician or surgeon possesses skill may be shown by those of the same profession who can speak from personal knowledge of his practice. This, however, would not authorize either party to inject into the case an issue as to some prior transaction, as to whether the results there were good or otherwise, or as to whether the results, whatever they may have been, were due to skill or lack of skill.

8. The court was requested by the defendants' counsel to charge that "if the jury find the stiffness of the thumb resulted from its changed position, from which the defendants left it, then the defendants are not liable." To this request the plaintiff's counsel suggested: "That is a question of fact." The court then said: "Yes, I think that is a question of fact, for the jury." Defendants excepted. What the changed position was, that was referred to, was left indefinite. If by reason of defendants' negligence a change of position was necessary, it could not be said, as matter of law, that defendants were not liable. The stiffness of the thumb was not the only injury complained of. The court afterwards charged, at the request of defendants, that if the jury found upon the evidence that any part of the injuries complained of were caused by the acts or neglect of the plaintiff or his parents, or by those who treated the plaintiff after the defendants ceased to do so, there could be no recovery. In view of this the defendants' counsel cannot complain of the action of the court upon the previous request.

9. The defendants' counsel requested the court to charge that "if the jury find from the evidence that the results complained of were not wholly caused by what the defendants did, or failed to do, the plaintiff cannot recover." To this the court replied: "That, I think, 1 will not charge, because the original injury may have had something to do with the matter. If the original injury has been complicated—made worse—by the want of skill and care of the defendants, they are responsible for just as much additional fault as resulted from that want of care and skill." To this the defendants excepted. There-

upon the court, at the request of defendants, charged that "if the jury should find from the evidence that any part of the injuries complained of were caused by the defendants, and a part was also caused by the fault of the plaintiff or his parents, or of others who treated the case after the defendants left it, then the plaintiff cannot recover." Taking these requests together, and the action of the court thereon, the defendants have no ground for complaint. See *Carpenter* v. *Blake*, 75 N. Y. 12, 24.

10. The defendants' counsel requested the court to charge that "if the jury find from the evidence that the contusion or injury on the back of the hand produced an inflammation in the sheaths of the tendons, which spread to the adjacent parts, and that such contusion was an adequate cause for the inflammation, suppuration, and stiffening which followed as a result thereof, and which do not develop at the surface for a period of from three to six days, then the injuries complained of are the natural results of the plaintiff's fall and misfortune, and the defendants are not liable." This the court declined to do, saying that it was a question of fact on the evidence. Thereupon, at the request of defendants, the court charged that "if the jury find from the evidence that it is just as probable that the injury complained of was caused either by the original severe injury, or by the interference of the plaintiff's parents, or by the subsequent manipulations and treatment of Dr. Doyle and others, as from the pretended tight bandaging, it is the duty of the jury to find a verdict for the defendants." Taking these requests together, and the action of the court thereon, the defendants have no good ground for complaint.

11. The defendants' counsel asked the court to charge that "if the jury find from the evidence that the position and stiffness of the thumb was caused by the abscess spoken of by Dr. Doyle, in the palm of the hand, which was not opened by him, but allowed to gather and break, and destroy the muscles and tissues in that vicinity, the defendants are not liable therefor." Also that, "if," etc., "the thumb was drawn down by an abscess, as spoken of by Dr. Doyle, and was not opened and the pus let out, but allowed to go on, then these defendants are not liable therefor, and the plaintiff cannot recover." These requests the court declined to charge, and defendants excepted. These requests assumed that the treatment by Dr. Doyle was not proper. That was a question of fact upon the evidence. Besides, the court had previously charged, at the request of the defendants, that "if the jury find from the evidence that any part of the injuries to plaintiff's hand and wrist were caused by the manipulations of Dr. Doyle, and the subsequent treatment of the same, the defendants are not liable, and the plaintiff cannot recover in this case, and their verdict should be for the defendants." The charge, as a whole, was fully as favorable to the defendants as they had a right to ask. The principles needed by the jury to the proper determination of the issues of fact were clearly and distinctly stated. The rights of the defendants, both on the taking of the evidence and in the laying down of the law applicable thereto, were fully protected. The case was exhaustively tried, and we find no error that would make it proper for us to grant a new trial.

The only other question presented relates to the amount of damages. It is claimed that the verdict was excessive. . No special considerations are urged in support of this proposition. In the view that the jury had a right to take of the case, not only was present injury and suffering to a large extent attributable to the acts or omissions of the defendants, but also a serious permanent injury. No sufficient ground is apparent for us to interfere. Judgment and order affirmed, with costs. All concur.