Present: Royce, Ch. J., Ross, Powers, Taft, Rowell, Tyler and Munson, JJ.

## CARRIE P. BRIDGMAN *v.* ESTATE OF SIMEON R. COREY.

*Certified transcript of stenographic notes as evidence. Different claim on former trial may be shown. Immaterial facts. Use of microscope the subject of expert testimony.*

1. A certified transcript of the stenographic notes of an official court stenographer in this State is receivable as evidence under R. L. s. 816, although such transcript was not filed with the clerk, or made under a special order of the court.

2. The question being whether the intestate was at Hardwick the last of May, with a stranger, whom the evidence of the plaintiff on this trial indicated to be a Mr. Putnam, *held*, permissible for the defendant to show that, on a former trial, the plaintiff introduced witnesses to prove that this stranger was a different person.

3. The note in suit was taken by witness Bridgman as the agent of the plaintiff. The defendant claimed that the note was forged by witness, who, on his cross-examination, was asked to and did write a copy of the note. *Held*, that this copy was not admissible "for the purpose of showing that witness disguised his hand, and did not write an honest copy."

4. F. T. Bridgman had been a witness before the commissioners when this note was presented for allowance. *Held,* that the trial court might exclude the question, "Did you testify to all the particulars of what transpired there when you testified before the commissioners?"

5. The plaintiff claimed that she loaned the intestate the money for which the note was given at a certain time when he was at Hardwick. *Held,* that the wife of the intestate could not be inquired of whether the intestate brought home that amount of money on that occasion, although she was familiar with and assisted in the management of all his business.

6. F. T. Bridgman testified that he had acted as the agent of the plaintiff in all he had done with reference to the taking and collection of this note. *Held,* not permissible to prove that, after the death of intestate, he went to a third party and requested him to take, and pretend to own, and present this note against the estate.

7. The plaintiff claimed that the intestate borrowed this money at five per cent for the purpose of reloaning it at six. *Held,* that the tax inventory of the intestate, made the year after the note was given, was not admissible to show that he claimed no deduction for debts due on this account, nor that the intestate, when the note fell due and remained unpaid, had a large sum on deposit, on which he only received four per cent; nor that the intestate was then afflicted with a disease which he knew to be mortal, and was engaged in settling all his affairs.

8. Where, in case of a witness offered as an expert, his undisputed testimony clearly shows that he is such expert, the other side makes no question in that respect, and the court, in excluding his testimony, bases its action expressly upon the ground that the matter to which the witness is offered cannot be the subject of expert testimony, the exceptions need not affirmatively show that the court found the witness to be an expert.

9. One having skill and experience in the use of the compound microscope may testify, as an expert, to what he sees through it, although the object to be looked at and the microscope are both in court, and the examination is made by the jury also.

Assumpsit for the amount of a promissory note. Plea, the general issue, with notice that the defendant would, on trial, deny the signature. Trial by jury at the February Term, 1889, Orleans County, TAFT, J., presiding. Verdict and judgment for the plaintiff. Exceptions by the defendant.

The case had been once tried before. On this trial it became material to show what certain witnesses testified to upon the former trial, and for that purpose the defendant offered a duly certified transcript of the stenographer's notes, taken upon such former trial, which was excluded. The transcript so offered was not made under order of the court, and was never filed in the clerk's office.

The testimony of the plaintiff tended to show that just before his death the intestate was at the village of Hardwick, where the plaintiff resided, and inquired for her for the purpose of paying the note, and that he came in company with a third person. Upon this trial the plaintiff's evidence indicated that this third person might have been Mr. Putnam from Montpelier. Thereupon the defendant proposed to show that upon the former trial the plaintiff claimed that this person was a Doctor Walton, and had introduced two witnesses to that effect.

The plaintiff claimed to have taken this note through her agent, F. T. Bridgman. It was agreed that the said Bridgman wrote the body of the note, and the defendant claimed that he forged the signature. He was improved as a witness by the plaintiff, and, on his cross-examination, was asked to and did write a copy of the note in suit. This copy the defendant afterwards offered in evidence "for the purpose of showing that when asked to write this copy he disguised his hand, and did not write an honest copy."

The said F. T. Bridgman testified that all he had said or done with or about this note and its collection, he had done as the agent of the plaintiff. Upon the trial the plaintiff introduced one Dorman Bridgman as a witness, who testified that after the death of Dr. Corey the witness, F. T. Bridgman, had come to him and wished him to take this note in suit, and pretend to own it and present it against the estate of Dr. Corey. The witness, F. T. Bridgman, had previously, in his testimony at this trial, denied having any such conversation with the said Dorman Bridgman.

The defendant claimed that this testimony was admissible for two purposes, first, to contradict the witness, F. T. Bridgman, and, second, on the main issue, as tending to show that if this note had been an honest one, a third party would not have been solicited to take it and become its owner for the purpose of presenting it to the commissioners. The court admitted it on the first ground, but held that it was not admissible for the second purpose, to which the defendant excepted.

The plaintiff introduced one Miles as a witness, who testified that in the spring of 1883 he went to Dr. Corey for the purpose of borrowing some money, and that Dr. Corey then told him that he had no money to loan himself, but that he was going to pay Carrie Bridgman, the plaintiff, some in a few days, and that he could probably get it of her.

In reference to this testimony, the defendant offered to show by Mrs. Corey that at that time Dr. Corey had a large sum of money lying idle, and that soon after he deposited in the bank nearly two thousand dollars, upon which he only received four per cent interest.

The defendant offered in evidence a tax inventory made by Dr. Corey in the spring of 1882, to the listers of Craftsbury, where he then resided and was a tax-payer, for the purpose of showing that he did not offset the debt of three hundred dollars as an indebtedness.

The defendant proposed to ask the witness, F. T. Bridgman, this question, which was excluded:

" Whether, after Dr. Corey's death, and the commissioners had met, you had a conversation with Mr. Perley, in which Mr. Perley asked you what had become of the account against Corey's estate ?"

The defendant also offered to show that the intestate died some weeks after this note became due; that for some time before his death he was very feeble; that he knew his disease was a mortal one, and was engaged in settling his affairs.

The plaintiff claimed that the note in suit had been written by the witness, F. T. Bridgman, upon a piece of paper upon which there had been no writing previous to the writing of the note thereon, a clean piece of paper.

The defendant maintained that there had been writing in pencil, which had been erased before the note was written in ink. Upon this point the defendant improved one Ames, who testified that for several years he had been largely engaged in the examination and comparison of handwriting; that in this he frequently made use of the compound microscope, and that for

the past five years he had made almost daily use of it in the examination of papers. He further testified that one unacquainted with the use of the compound microscope could make no use of it in such examination, but the court did not find this to be the fact. He further testified that one having intelligence and judgment in the use of the different object glasses, he supposed might use it.

The defendant offered to show by this witness that he made an examination of the surface of the paper upon which the note in suit was written, under the compound microscope; that such examination revealed the traces of pencil marks in certain portions, and that the fibre of the paper over the entire surface had the appearance of having been broken by being rubbed before the ink was laid on. The court held, however, that expert testimony was not competent for this purpose, that the microscope which was there in court could be used by the jury themselves, and excluded the testimony.

The compound microscope was in court and the jury were permitted to use the same in the examination of the note in suit.

The nature of the other exceptions appears in the opinion.

R. L. ss. 810, 812 and 816 are as follows:

Sec. 810. "The presiding judge of each County Court and the chancellor of the Court of Chancery in each county, may each in his discretion, appoint and employ a stenographic reporter, to make a *verbatim* report of the proceedings of either of said courts, at any term thereof; and of such proceedings in hearings before auditors, referees and masters in chancery, as either such presiding judge or such chancellor may order to be reported, for the use and convenience of said courts and of parties having business therein. The judge or chancellor may discharge such reporter at any time."

Sec. 812. "Such reporter shall be sworn before entering upon his duties, and shall be responsible for the correctness of his reports, and all copies thereof made by him or under his direction and certified by him to be correct."

Sec. 816. "All transcripts of evidence, or proceedings, in any cause or hearing tried in either of such courts, or in any cause or hearing tried before an auditor, referee or master in

chancery, ordered to be reported by the presiding judge or the chancellor, and made by, or under the direction of, said reporter, and duly certified by him to be a *verbatim* transcript of his *verbatim* stenographic notes of such evidence or proceedings, shall be received as evidence in any court in any cause, where the subject matter would be admissible under the rules of evidence."

*L. H. Thompson* and *C. A. Prouty*, for the defendant.

The transcript of the stenographer's notes should have been admitted. The statute makes him an officer of the court, and expressly provides that a transcript of his notes duly certified shall be received as evidence. R. L. ss. 815, 816, 810. *Quinn* v. *Halbert*, 57 Vt. 178. *State* v. *Hannett*, 54 Vt. 88, is not in point. There no transcript was offered, but the stenographer himself was called to read his notes.

The defendant should have been allowed to show that the plaintiff introduced testimony on the former trial to prove that the stranger with Dr. Corey was a different person from the one indicated by her evidence on this trial. It is always permissible to show that a party has made claims inconsistent with those he makes on trial. *Lander* v. *Seaver*, 32 Vt. 114, 125; *Nye* v. *Merriam*, 35 Vt. 445; *Hotchkiss* v. *Ladd*, 43 Vt. 353.·

It was proper to ask the witness, F. T. Bridgman, whether he had testified to all that took place before the commissioners. *Briggs* v. *Taylor*, 35 Vt. 68.

The amount of this note was but three hundred dollars, and the plaintiff claimed that the intestate borrowed it at five per cent to re-let it at six. In view of this claim it was permissible to show that he asked no deduction in his tax inventory, that he was a wealthy man and that, when this note fell due, had some thousands on deposit, upon which he received but four per cent interest; that he was for some time before his death conscious that his disease was a mortal one, and carefully settled all his business affairs. All these circumstances render improbable the facts asserted by the plaintiff, and hence are admissible. *Richardson* v. *Turnpike Co.*, 6 Vt. 504; *Downer* v.

*Bowen*, 12 Vt. 454; *Kirkaldie* v. *Paige*, 17 Vt. 260; *Hard* v. *Brown*, 18 Vt. 97; *Houghton* v. *Clough*, 30 Vt. 312; *Kimball* v. *Locke*, 31 Vt. 683; *Frost* v. *Frost*, 33 Vt. 640; *Kidder* v. *Smith*, 34 Vt. 294; *Strong* v. *Slicer*; 35 Vt. 43; *Henry* v. *Huntley*, 37 Vt. 316; *Thayer* v. *Davis*, 38 Vt. 164; *Brown* v. *Welch*, 38 Vt. 241; *Hine* v. *Pomeroy*, 39 Vt. 219; *Hardy* v. *Cheney*, 42 Vt. 421; *Bennett* v. *Stacy*, 48 Vt. 163; *Davis* v. *Windsor Savings Bank*, 48 Vt. 540; *Read* v. *Read*, 56 Vt. 493.

As the agent of the plaintiff, F. T. Bridgman asked Dorman Bridgman to take this note and pretend to own it and present it against the estate of Dr. Corey.

If the plaintiff had done this herself it would have been permissible to show it. It is equally so when she acts through her agent. 1 Greenl. Ev. (12th Ed.), s. 113; *Baldwin* v. *Doubleday*, 59 Vt. 7.

Ames should have been permitted to testify as to what an examination with the microscope revealed.

The court assumed that he was an expert, and from his undisputed evidence he clearly was. Hence that question cannot be raised here. 1 Greenl. Ev. (12th Ed.), s. 2; 1 Best Ev. (Wood's Ed.) [102], s. 81.

The court below ruled that there was no such thing as an expert in the use of the compound microscope; that the jury should take it and look for themselves. This was error. The use of the microscope requires both skill and experience; it reveals nothing save in the hands of an expert. If not the subject of expert testimony, then practically it must cease to be an instrument of evidence. As to when the testimony of experts may be used, see 1 Greenl. Ev. (12th Ed.), s. 440; 2 Best Ev. (Wood's Ed.) [*649], s. 513; *Union Pacific R. R. Co.* v. *Clopper*, U. S. 26, L. Ed., p. 243; *Eastern Trans. Line* v. *Hope*, 95 U. S. 297, 24 L. Ed. 477; *State* v. *Phair*, 48 Vt. 377; *Cram* v. *Cram*, 33 Vt. 18; *Sturgis* v. *Knapp*, 33 Vt. 531; *Dean* v. *McLean*, 48 Vt. 421; *Masons* v. *Fuller*, 45 Vt. 29; *Bemis* v. *R. R. Co.*, 58 Vt. 640, 641.

Bridgman *v.* Corey's Estate.

*Edwards & Burke* and *Bates & May*, for the plaintiff.

The transcript was not admissible. It did not appear that the stenographer was sworn, nor that the transcript was ordered to be reported by the presiding judge. It is only in the latter case that the statute makes it evidence. *State* v. *Hannett*, 54 Vt. 88; R. L. s. 812; *Webster* v. *Calden*, 55 Me. 165; *Reid* v. *Reid*, 14 Pac. Rep. 490; 22 N. E. Rep. 89; R. L. s. 816.

The copy of the note was properly excluded. It was not offered as a standard for comparison, and it is doubtful whether it could properly be used as such in case it had been. *Chandler* v. *LeBarron*, 45 Me. 534; *King* v. *Donahue*, 110 Mass.

The inventory was a declaration of the intestate in his own favor and inadmissible. *Ellis* v. *Cleveland*, 55 Vt. 358; *Judevine* v. *Weeks*, 57 Vt. 278.

The court did not find that Ames was an expert in the use of the microscope. That fact must affirmatively appear, before this court will reverse the judgment because his testimony was excluded. *Crane* v. *Northfield*, 33 Vt. 124; *Carpenter* v. *Corinth*, 58 Vt. 214.

The court might in its discretion refuse to allow the putting to the witness Bridgman the general question, "Did you testify to all the particulars of what transpired there when you testified before the commissioners." Counsel should have limited the inquiry to a given particular.

The state of Dr. Corey's health and the amount of money he had on deposit at a given time were immaterial. *Strong* v. *Slicer*, 35 Vt. 43; 3 Vt. 153; 30 Vt. 277; 48 Vt. 578; 56 Vt. 710; 58 Vt. 665; *Stimpfler* v. *Roberts*, 18 Penn. St. 233; *Atwood* v. *Scott*, 99 Mass. 177; *Hilton* v. *Scarborough*, 5 Gray, 422.

The fact that F. T. Bridgman requested Dorman Bridgman to take and pretend to own this note was properly excluded. It does not appear that the plaintiff ever instructed her agent to do this, or knew that he had done so. Declarations of the agent after the execution of the note could not be given to impeach its character. *Baldwin* v. *Doubleday*, 59 Vt. 7; 52 Vt. 409; 23 Vt. 129.

Bridgman *v.* Corey's Estate.

The opinion of the court was delivered by

ROYCE, Ch. J.  The first statute authorizing the appointment of a reporter was No. 52 of the Acts of 1869.  That act empowered the County Court to appoint and employ a reporter to report the proceedings of the court, for the use and convenience of the court and parties having business therein, and required that such reporter should be sworn to the faithful discharge of his duty, and should be responsible for the correctness of his reports.

In 1878, by act No. 36, the presiding judge was required, in all trials on indictments where the punishment, on conviction, would be death or imprisonment for ten years or more, to procure a stenographer to take down all the proceedings of the trial, at the expense of the State.  By the second section of No. 44 of the Acts of 1878, the presiding judge and the chancellor of each Court of Chancery was given power to appoint and employ a stenographic reporter to make a *verbatim* report of the proceedings of either court at any term thereof, and of such proceedings and hearings before auditors, referees and masters in chancery as such judge or chancellor might order to be reported.  The third section provided for the filing with the clerk, within a time fixed, of all evidence and proceedings in all cases directed by the presiding judge, and the furnishing of copies to any parties interested.  The fourth section provided that all such transcripts, in cases ordered to be reported by the presiding judge or chancellor, duly certified by such reporter, should be received in evidence in any cause where the subject matter would be admissible under the rules of evidence.

The exceptions show that the transcript made by the official stenographer, offered in evidence in this case and excluded by the court, was duly certified by the stenographer to be a *verbatim* transcript of his *verbatim* stenographic notes of the evidence given upon a former trial.  The transcript was not filed in the clerk's office or ordered to be transcribed by the court. Was it error to exclude it?

Bridgman v. Corey's Estate.

In construing statutes, such construction should be adopted as will carry into effect the true intent and object of the enactment. There can be no doubt as to the object and purpose of the statutes above referred to. It was to preserve the proceedings and evidence in causes in a manner and form that would be authentic and certain, as well as to expedite the transaction of business by the court, and for the benefit of those who might be interested in the proceedings. With that purpose in view, the reporter was made an officer of the court, to be sworn before entering upon his duties, and made responsible for the correctness of his reports and the copies made by him and certified to be correct. His duties are prescribed by the statutes providing for his appointment, and while acting in the discharge of his duties he is acting under the order of the court making the appointment. He is required to furnish a copy of his notes to any party in interest, upon request and the payment of fees. The fact that it may have been made under a special order of the court was not intended to effect the question of its admissibility as evidence, and to make its admissibility depend upon such an order would, in our judgment, be contrary to the spirit and intent of the law.

In *State* v. *Hannett*, 54 Vt. 83, referred to by plaintiff's counsel, no transcript made by the reporter was offered in evidence, but the reporter was improved as a witness and asked to read his notes of respondent's evidence upon a former trial, and the contention was as to what portion of his notes he should be permitted to read. No such question was made as is here presented.

In *Quinn* v. *Halbert*, 57 Vt. 178, Judge TAFT, in the opinion, says: "Was the transcript of Quinn's testimony admissible? While there is force in the suggestions of defendant's counsel, we think the section 816 of R. L. makes it admissible, although the stenographer described in words signs made by the witness."

The above are the only Vermont cases to which our attention has been called that it is claimed has any bearing upon the question here presented. Keeping in view the evident intention

of the law and the purposes to be accomplished by it, we hold that to make the transcript admissible for the purposes for which it was offered, it was not necessary that it should have been made under a special order of the court, and that.it was error to exclude it. It appears to have been properly certified, and, inasmuch as the law required that the reporter should be sworn, the presumption would be that he was sworn.

The evidence offered by the defendant that upon the former trial the plaintiff claimed that the person with Dr. Corey, upon the occasion referred to in the evidence, was a different one from the one claimed upon this trial, should have been admitted. The reasons given for the admissibility of that kind of evidence are fully stated in *Landers* v. *Seaver*, 32 Vt. 114; *Nye* v. *Merriam*, 35 Vt. 445, and *Hotchkiss* v. *Ladd*, 43 Vt. 355.

The copy of the note which was made by the witness Bridgman at the request of defendant's counsel upon his cross-examination, was offered as evidence by the defendant. Its admissibility would depend upon the purpose for which it was offered. If offered for the purpose of comparison with the copy of the note in controversy, which it was admitted the witness made, or with the signature, which it was claimed by defendant he wrote, it would have been admissible, but it was only offered for the purpose of showing that he disguised his hand and did not write an honest copy. Its use would have no direct tendency to show whether the witness wrote the signature to the note in controversy or not, and it does not appear that it was error to exclude it.

The same witness testified in relation to the claim here made before the commissioners on Dr. Corey's estate, and upon his cross-examination was inquired of with reference to his testimony given before the commissioners, and counsel for defendant proposed to ask him: "Did you testify to all the particulars of what transpired there when you testified before the commissioners?" The question was properly excluded. If counsel would discredit a witness by showing that he has testified differently upon some previous occasion, or has omitted to state facts which

are regarded as material, the attention of the witness should be called to the particular things in which it is claimed his testimony is variant, or to the facts omitted to be testified to by him, so that he may have opportunity to make all proper explanations.

The plaintiff's evidence tended to show that the note in suit was given and the money procured upon it on the occasion of Dr. Corey's going to Hardwick to make a pension affidavit for Mr. Edwards; and Mrs. Corey, after stating her knowledge of Dr. Corey's business affairs, was asked whether the Dr., when he came home that day from Hardwick, brought home $300 with him; and the court ruled that the question was inadmissible. The only answer that the witness could have given to the question must have been the expression of an opinion, or the statement of what was communicated to her by Dr. Corey, and such an answer would have been inadmissible; so there was no error in that ruling.

There was no error in defining the purpose for which the evidence of Dorman Bridgman was admissible.

In relation to the testimony of the witness Miles, it was simply an offer to prove the declaration of Dr. Corey, and was clearly inadmissible; and the fact that Dr. Corey had a large sum of money in the savings bank when the note in suit was given and when it became due, had no such bearing upon the question of the signature to the note in question as to make it admissible.

The tax inventory made by Dr. Corey was not admissible. The plaintiff was not a party or privy to it, and it was not allowable for Dr. Corey to manufacture evidence to affect her rights.

The question proposed to be put to Mr. Perley in relation to a conversation he had with the witness Bridgman, was immaterial and properly excluded; and the offer to show the condition of Dr. Corey's health by his declarations was properly excluded. The fact that he was engaged in settling up his business for some time previous to his death had no tendency to show that his signature to the note was forged.

Bridgman *v.* Corey's Estate.

The witness Ames testified that for several years he had been largely engaged in the examination and comparison of hand writing; that in making such examinations he frequently made use of the compound microscope, and that for the last five years he had made almost daily use of it; that one unacquainted with its use could not make use of it in making such examinations, but that one having intelligence and judgment in the use of the different object glasses he supposed might use it. After the witness had so testified, the defendant offered to show by him that upon an examination of the paper upon which the note was written under the microscope, he discovered traces of pencil marks, and that the fibre of the paper had the appearance of having been broken and rubbed before the ink was laid on. The court ruled that expert evidence was not competent for that purpose; that the microscope, which was in court, could be used by the jury; and excluded the evidence.

It is now claimed that it does not appear that the witness was qualified to testify as an expert; but it will be noticed that the exclusion of his evidence was not put upon that ground. The court treated him as an expert, and based its ruling upon the fact that expert evidence was not admissible; and no objection appears to have been made to the evidence upon the ground that the witness was not qualified to testify as an expert.

It is not necessary to repeat what has been often said in the adjudged cases in this state as to what constitutes an expert. The only reason that can be assigned for the exclusion of the evidence must be that in the judgment of the court the jury, with the aid of the microscope, were as well able to judge of the facts to which the witness's attention was proposed to be called as the witness. That, we think, was an erroneous view to take of the subject. In *Bemis v. Railroad Co.,* 58 Vt. 636, it was said that experience and familiarity constitute peculiar knowledge and give a person special skill, and that such a person could testify as an expert. The witness possessed these qualifications, and should have been permitted to testify as an expert.

*Judgment reversed and cause remanded.*