[No. 9220. Department One. April 17, 1911.]

THE STATE OF WASHINGTON, *Respondent*, v. HARVEY SMAILS, *Appellant*.[1]

PERJURY—INFORMATION—SUFFICIENCY—CHARGING FALSITY OF TESTIMONY. An information for perjury sufficiently negatives the truth of the false testimony when it sets out the false testimony, and asserts its falsity by negation and by setting out the true facts.

SAME—ACCUSED'S KNOWLEDGE OF FALSITY. An information for perjury sufficiently charges the accused's knowledge of the falsity of his testimony where it charges that he wilfully, knowingly, and falsely testified to a certain state of facts with knowledge of each fact alleged to negative the truth thereof.

EVIDENCE—EXPERTS—OPINIONS—FORGERY. Bankers and accountants of long standing having an extended experience in dealing with commercial paper and detecting irregularities therein are qualified to express their opinions as to the forgery of a note and mortgage.

SAME—EXPERT TESTIMONY—SUBJECTS—FORGERY BY ADDITIONS. It is competent for experts to express an opinion as to whether certain words and figures upon a note and mortgage were added or written at a different time, with a different pen or ink or under different circumstances from the other parts of the writing thereon.

[1]Reported in 115 Pac. 82.

PERJURY—EVIDENCE—SUFFICIENCY.    A conviction of perjury is sustained by the direct testimony of one witness and corroborating circumstances established by independent evidence of such a character as to clearly turn the scale and overcome the oath of the defendant and the legal presumption of innocence.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COUNSEL.    Prejudicial error cannot be predicated on an improper insinuation of the prosecuting attorney on cross-examination of the defendant's witness, where an objection thereto was promptly sustained and the jury were instructed to disregard it.

CRIMINAL LAW—APPEAL—RECORD—MISCONDUCT OF COUNSEL.    Error cannot be predicated upon improper argument of counsel to the jury, where it was not preserved in the record on appeal, and no motion was made below to strike it or to instruct the jury to disregard it.

CRIMINAL LAW—RECEPTION OF EVIDENCE.    A witness should not be permitted to state his impression after he had testified that it was so long ago that he could not swear to the answer to the question.

CRIMINAL LAW—TRIAL—INSTRUCTIONS AS LAW OF CASE—PERJURY. Where, upon a trial for perjury, the court instructed the jury that all the testimony given by the accused in a civil action was material to the issue thereon, and the same was not excepted to, it became the law of the case, and error cannot be predicated on other instructions authorizing the jury to convict if they find that the accused gave the testimony as charged or "some substantial part of it."

CRIMINAL LAW—TRIAL—MISCONDUCT OF WITNESS—TIME FOR OBJECTION.    An objection that the regular superior court judge of the county, who was a witness for the state, was guilty of improper conduct in mingling with the other witnesses and manifesting an interest in the prosecution, comes too late when first made on motion for a new trial.

CRIMINAL LAW—NEW TRIAL—TIME FOR MOTION.    A second motion for a new trial, made after appeal taken and pending the hearing in the supreme court, is untimely and cannot be considered.

Appeal from a judgment of the superior court for Walla Walla county, Miller, J., entered May 4, 1910, upon a trial and conviction of perjury.    Affirmed.

*Zent & Cannon* and *Sharpstein & Sharpstein,* for appellant, to the point that the witnesses were not competent to testify as experts or to give their opinions as to the age or date of

the writings, cited: *Ferguson v. Hubbell*, 26 Hun 250; *Jewett v. Draper*, 6 Allen 434; *Cheney v. Dunlap*, 20 Neb. 265, 29 N. W. 925, 57 Am. Rep. 828; *Jones v. Tucker*, 41 N. H. 546; *Clark v. Bruce*, 12 Hun 271; *Ellingwood v. Bragg*, 52 N. H. 488; *Pearson v. Alaska Pacific Steamship Co.*, 51 Wash. 560, 99 Pac. 753, 130 Am. St. 1117; *Williams v. Clark*, 47 Minn. 80, 49 N. W. 398; *In re Rockey's Estate*, 155 Pa. St. 453, 26 Atl. 656; *Collins v. Crocker*, 15 Ill. App. 107; *Taylor v. Town of Monroe*, 43 Conn. 36; *New England Glass Co. v. Lowell*, 7 Cush. 319; *Schwander v. Birge*, 46 Hun 66; *Hellyer v. People*, 186 Ill. 550, 58 N. E. 245; *Graham v. Pennsylvania Co.*, 139 Pa. 149, 21 Atl. 151, 12 L. R. A. 293; *Ryder v. Jacobs*, 182 Pa. St. 624, 38 Atl. 471.

*Everett J. Smith*, for respondent.

FULLERTON, J.—In February, 1910, the appellant Smails was informed against by the prosecuting attorney of the county of Walla Walla, for the crime of perjury in the first degree, the charging part of the information being as follows:

"Everett J. Smith, prosecuting attorney of and for the county of Walla Walla, in the state of Washington, on behalf of said state accuses Harvey Smails of the crime of perjury in the first degree, and informs the court that at the courthouse in Walla Walla, the county seat of said county, on the 12th day of January, 1910, in and before the superior court of said state for said county, there came on for trial a certain civil action between one Maude Aubian, as plaintiff, and Harvey Smails and John D. Walter, as defendant, for the annulment and cancellation of a certain instrument purporting to be a mortgage upon certain lands situate in said county and owned, or alleged to be owned by the said Maude Aubian, to secure the payment by her, the said Maude Aubian, to the said Harvey Smails of a certain promissory note for the principal sum of twenty-two hundred and fifty dollars, upon which trial it became and was a material question whether the said note and mortgage were made, signed, executed, acknowledged and delivered to him, the said Harvey

Smails, by her, the said Maude Aubian, as and for a note and mortgage for said principal sum of twenty-two hundred and fifty dollars, or whether she, the said Maude Aubian, made, signed, executed, acknowledged and delivered to him, the said Harvey Smails, at the date said purported note and mortgage bore, a note and mortgage for the principal sum of two hundred and fifty dollars, and no more, and whether said last-mentioned note and mortgage had been, after being so made, signed, executed, acknowledged and delivered, was without the knowledge or consent of her, the said Maude Aubian, materially altered so as to be and represent a note and mortgage for the principal sum of twenty-two hundred an fifty dollars, and whether the same, after being so altered, were or were not the aforesaid purported note and mortgage so sought to be adjudged and declared null and void, and by such adjudication and judicial declaration, to be so canceled, and thereupon he, the said Harvey Smails, then and there, on the said 12th day of January, 1910, appeared in this, the said superior court, at and during the said trial, as a witness in behalf of himself, the said Harvey Smails, and his said codefendant, and as such was sworn by the said court, in due form of law, that the evidence he should give in said cause and issue should be the truth, the whole truth and nothing but the truth, which said oath was duly administered to him, the said Harvey Smails by the Honorable Thomas H. Brents, the judge of said court, then and there presiding over said trial, the said court then and there having jurisdiction of said cause and the said court and judge then and there having lawful authority to administer said oath; and the said Harvey Smails then and there, as such witness in said court and cause, upon said trial, and upon his said oath, so administered as aforesaid, wilfully, corruptly, knowingly, falsely and contrary to his said oath, testified in said cause and issue, then and there on trial in and before said court as aforesaid, in substance and effect that said note was made, signed, executed and delivered to him, the said Harvey Smails, by the said Maude Aubian at his office in Seattle, on the day of its date, in its then present form, as and for a note for the principal sum of twenty-two hundred and fifty dollars; that said mortgage was, at said time and place, made, signed, executed, acknowledged and delivered to him, the said Harvey Smails, by her, the said Maude Aubian, in its then present form and

as and for a mortgage to secure the payment of said note as described by him, the said Harvey Smails, in his testimony aforesaid, for the said sum of twenty-two hundred and fifty dollars; that said Maude Aubian came to his said office at the time and requested him, the said Harvey Smails, to loan her, the said Maude Aubian, the said sum of twenty-two hundred and fifty dollars; that he, the said Harvey Smails, then and there in the presence of her, the said Maude Aubian, directed one Joseph F. Eades, who was then and there present in said office, to draw said note and mortgage for said sum; that the same were so drawn by the said Joseph Eades and signed by said Maude Aubian in their said form and for said sum, and not for and as a note and mortgage for the sum of two hundred and fifty dollars; that said testimony, and each and every part thereof, was, when so given by him, the said Harvey Smails, as aforesaid, material to said issue and wholly false; that, in truth and in fact, as he, the said Harvey Smails, then and there well knew, said note was not made, signed, executed or delivered to him, the said Harvey Smails, by the said Maude Aubian in its then present form, nor as for a note for the principal sum of twenty-two hundred and fifty dollars, or otherwise than as and for a note for the principal sum of two hundred and fifty dollars; that said mortgage was not made, signed, executed, acknowledged or delivered by her, the said Maude Aubian, to him, the said Harvey Smails, at the time and place so stated by him, the said Harvey Smails in his testimony aforesaid, as he, the said Harvey Smails, well knew when giving said testimony, in its then present form, nor as for a mortgage to secure the payment of said or any note for the said principal sum of twenty-two hundred and fifty dollars, or a note for any other or greater sum than two hundred and fifty dollars; that said Maude Aubian, as he, the said Harvey Smails, well knew when giving said testimony as aforesaid, did not at the time and place specified by him, the said Harvey Smails, in his said testimony, or at any other time or place request him, the said Harvey Smails, to loan her the said sum of twenty-two hundred and fifty dollars, or any other or greater sum than two hundred and fifty dollars; that as he, the said Harvey Smails, well knew when giving said testimony as aforesaid, he, the said Harvey Smails, did not at the time and place so specified by him in said testimony, direct said Joseph F. Eades to draw

said note and mortgage, or either of them, for said sum of twenty-two hundred and fifty dollars in the presence of her, the said Maude Aubian, and that said note and mortgage were not, nor was either of them, so drawn by said Joseph F. Eades and signed by her, the said Maude Aubian, in their or its form at the time of giving said testimony by him, the said Harvey Smails, or for said sum of twenty-two hundred and fifty dollars, or for any other or greater sum than two hundred and fifty dollars, as he, the said Harvey Smails, then and there well knew, and that he, the said Harvey Smails, then and there thereby committed the said crime of perjury, in the first degree, contrary to the form, force and effect of the statute in such cases made and provided and against the peace and dignity of the state of Washington."

On being arraigned, the appellant entered a plea of not guilty to the information, and in due course a trial was had on the issue thus made, which resulted in his conviction and sentence to the state penitentiary. This appeal followed.

Taking up the assignments of error in the order in which the appellant presents them, the first to be noticed is the contention that the information does not state facts sufficient to constitute a crime. It is argued, that the information fails to show wherein the testimony alleged to have been given by the appellant in the civil action was false; that it does not clearly point out the material testimony upon which the state relies for a conviction; and that it does not set forth what portion of the testimony alleged to have been given was known by the appellant to be false. But we think the information sufficiently definite in these respects. It sets out the false testimony given at the trial of the civil action, and asserts its falsity not only by negation, but by setting out the true facts by way of antithesis. This is a sufficient negation of the truth of the testimony given, under all of the authorities. The claim that knowledge on the part of the appellant of the falsity of his testimony is not sufficiently alleged is equally without foundation. It will be observed, by a reference to the information, that the pleader not only charged the appellant with having "wilfully, corruptly, knowingly and falsely" tes-

tified to a certain state of facts, but he also charged him with knowledge of each particular fact alleged to negative the truth of the statement made by the witness. It would seem that the allegation could hardly have been made more definite.

On the trial the state sought to prove that the note and mortgage, which was the subject of controversy in the civil action in which the perjury was charged to have been committed, was given as a note and mortgage for the sum of two hundred and fifty dollars, and had been subsequently altered so as to make it appear to be a note and mortgage for two thousand two hundred and fifty dollars. To that end it called certain expert witnesses who were allowed to testify, over the objection of the appellant, that, in their opinion, the first figure "2" in in the number "2250" was written at a different time, and under different circumstances, from that under which the remainder of the figures were written, and that the word "Twenty," preceding the words "Two hundred and fifty," was written at a different time, and under different circumstances, from that under which the words "Two hundred and fifty" were written; also that, in the mortgage, the word "Twenty," in the two places where it precedes the words "Two hundred and fifty," was written at a different time, and under different circumstances, from that under which the other words were written. To this evidence the appellant makes two objections; first, that the witnesses themselves were not qualified to testify as to the matter; and second, that the subject-matter of the inquiry itself was not such as called for expert testimony.

As to the first objection, the witnesses offered were shown to be bankers and accountants of long standing, having an extended experience in dealing with commercial paper and securities of the character of that in question in this case, and that a part of their duties was to detect irregularities of the nature of those in question. There is no fixed criterion by which an expert can be determined. If he is shown to have peculiar skill and knowledge concerning the subject of the

inquiry, gained by observation, personal experience, or study, not possessed by men in the common walks of life, he is an expert upon that subject and is competent to give an opinion thereon. The witnesses in the case measure up to this test, and in our judgment, were competent to testify.

The contention that the evidence itself was inadmissible presents a question of more difficulty, yet we think the lower court correctly resolved it. The line of demarkation between matters that fall within the knowledge of mankind generally and matters that are the subject of special and peculiar knowledge cannot, from the nature of things, be very accurately drawn. The one, of necessity, shades into the other, and hence, even though the extremes of the opposing rules may be definitely marked and error predicated thereon easy of determination, the trial judge must have something of discretion whether he will or will not admit opinion evidence when the line of demarkation between these rules is approached. Now, it is the almost universal authority that a witness duly qualified may testify that in his opinion a given writing is or is not the writing of the person by whom it was purported to have been written, but is the writing of another; or, in other words, he may testify not only that a given writing is or is not a forgery, but that it was or was not forged by a particular person. It would seem, therefore, by analogy, that an expert witness might legally testify that, in his opinion, a part of a given writing, although concededly written by the person by whom it is purported to have been written, was written at a different time, under different circumstances, with a different pen, or with different ink, from that with which other parts of the same writing were written. Such matters are, to our minds at least, matters of special and peculiar knowledge, rather than knowledge common to mankind in general. While the authorities on the particular question are not entirely uniform, we think the greater weight is with the ruling of the trial judge. In 15 Am. & Eng. Ency. Law (2d ed.), 278 *et seq.*, the rule is stated as follows:

"It seems that an expert may testify as to any matter bearing upon the genuineness of a disputed writing regarding which an opinion can be formed from an inspection of the writing itself.

"Thus he may testify as to the characteristics of the handwriting in question; as to whether the writing is natural or feigned; as to alterations, additions, or erasures; as to whether the whole of an instrument was written by the same hand, with the same pen and ink, and at the same time; as to whether two instruments or signatures were written with the same ink; as to whether an instrument was written with a pen; or as to the age of a writing."

In *Quinsigamond Bank v. Hobbs*, 11 Gray 250, it was held competent to permit an expert witness to testify whether the whole of a promissory note was written at the same time. So in *Glover v. Gentry*, 104 Ala. 222, 16 South. 38, the question was whether a promissory note had been altered from a note for eighty dollars to one for twelve hundred and eighty dollars by writing therein, subsequent to its execution, the words "Twelve hundred and" before the word "eighty," and it was held competent to permit experts to give it as their opinion that the words "Twelve hundred and" were written in a different ink, at a different time, and in a different hand, than was the word "eighty." In *Tally v. Cross*, 124 Ala. 567, 26 South. 912, it was held competent for an expert witness to testify that, in his opinion, two papers were written at the same time. In *Bridgman v. Corey's Estate*, 62 Vt. 1, 20 Atl. 273, it was held that one having skill and experience in the use of a compound microscope could testify that an examination of a disputed note through the microscope showed traces of pencil marks on the paper on which the note was written, and that the fibre of the paper had the appearance of having been broken or rubbed off before the ink was laid thereon, notwithstanding both the note and microscope were before the jury, and the matter testified to subject to their inspection. In *Vinton v. Peck*, 14 Mich. 287, one of the questions at issue was whether or not the note which was the subject-matter of

the action had been changed from a note of eight dollars to a note of eighty dollars by adding the letter "y" to the word "eight." One Clark was called as a witness and was permitted to testify that, in his opinion, the note had not been so altered, · giving as his reason for the conclusion that the letter "y" could not have been added because of its relation to other letters. This was assigned as error, and the court, passing on the assignment, used the following language:

"This testimony was proper. The witness was engaged in a business which would be quite apt to familiarize him with all the ordinary appearances of writings, and the addition of a letter, after a document had been finished, is so generally adapted to give it a peculiar and recognizable appearance, that no great amount of experience would be necessary to detect it in ordinary cases. The value of a witness's belief must depend upon circumstances, but it is proper to go to the jury like other questions upon the genuineness of writings. It is very true that the jury may examine the paper for themselves, and that opinions are not usually admissible where the jury can form their own conclusions unaided. But we do not think it would be safe in this country to adopt a rule which assumes such a degree of knowledge and skill among jurors. Even reasonably expert writers may obtain valuable aid from opinions on such questions, and as neither law nor custom requires our juries to meet any standard of education, we think that to exclude such aid would lead to absurd results. The most enlightened courts have availed themselves of such assistance, and we deem it wise to use it in all cases where it is at hand."

See, also, *Dubois v. Baker*, 40 Barb. 556; *Ballentine v. White*, 77 Pa. St. 20; *Eisfield v. Dill*, 71 Iowa 442, 32 N. W. 420; *Cox v. Dill*, 85 Ind. 334; *Moye v. Herndon*, 30 Miss. 110; *Rogers v. Tyley*, 144 Ill. 652, 32 N. E. 393.

In this state the precise questions seem not to have been decided, but we have held that an expert in handwriting may testify as to the genuineness of written instruments where he knows the handwriting of the person whose writing is in question, and also that it is competent for an expert to make comparison between the disputed signature and a genuine signa-

ture and give his opinion whether the disputed signature is genuine or not. *Moore v. Palmer*, 14 Wash. 134, 44 Pac. 142; *Poncin v. Furth*, 15 Wash. 201, 46 Pac. 241. The cases on the other side, we shall not review. Those thought to bear upon the question will be found collected in the briefs of the appellant's learned counsel. Without further inquiry, therefore, we conclude that the court did not err in admitting the evidence of which complaint is made.

The third assignment of error is based upon the ruling of the trial court refusing to withdraw the case from the consideration of the jury. But in our opinion the testimony was ample to sustain the conviction. There was not, it is true, the direct testimony of two witnesses to the perjury, but there was the direct testimony of one witness, and corroborating circumstances established by independent evidence of such a character "as clearly to turn the scale and overcome the oath of the defendant and the legal presumption of his innocence," if the jury believed the evidence. This was sufficient under the rule announced by us in *State v. Rutledge*, 37 Wash. 523, 79 Pac. 1123.

During the cross-examination of the appellant's witness Joseph F. Eades, the following occurred. By the prosecuting attorney:

"Q. At the time this mortgage was signed by Mrs. Aubian where did you find her? At the time the affidavit was signed? A. I was down to see a client of mine in the Miner Hospital, to see a client of mine, and while I was there Mrs. Aubian was there or she came after I was there, and I had this affidavit at this time and we went outside and I told her about it. She had asked me when she would get this matter settled up and get her money, and I told her then that as soon as this matter went back there she would get what was coming to her then. Q. Who was the client? A. Miss Mitchell. Q. Do you know where she is now? A. I do not know where she is now. Q. Have you seen her since the civil case here? A. Yes, sir. Q. Where? A. In Seattle. Q. She is a client of yours? A. Yes, sir. I supposed she would be here at this trial, and I am sorry she is not. Q. You are sorry she is not? A. Yes,

sir. Q. You heard her testimony in the court below? A. Part of it; I went to Portland when the case was going on. Q. You heard her testify that this note and mortgage was not drawn for the sum of —(Interrupted). Mr. Zent: I ask that the prosecuting attorney be reprimanded and that the jury be instructed to disregard what the attorney has said. The Court: I think the last question will be stricken out, and the jury instructed not to consider it as a part of the evidence in the case."

This is assigned as improper conduct on the part of the prosecuting attorney, and a reversal it asked because thereof. But we think there was nothing here on which to predicate reversible error. The cross-examination was proper enough down to the last question, and counsel's objection to that was promptly sustained, and the jury told not to consider it as part of the evidence in the case. It is to be presumed that the jurors, as sensible and intelligent men, obeyed the instruction of the court and disregarded the insinuation the question contained, rather than that they drew any unwarranted inferences therefrom. The cases cited by counsel in support of this claim of error, namely: *Baldwin v. Grand Trunk R. Co.,* 64 N. H. 596, 15 Atl. 411; *Bullard v. Boston & M. R. R.,* 64 N. H. 27, 5 Atl. 838, 10 Am. St. 367, and *Turner v. Muskegon Machine & Foundry Co.,* 97 Mich. 166, 56 N. W. 356, are cases where an abuse of the privilege of cross-examination was carried to extreme lengths, yet it seems to us that in each of them the court, in finding grounds for reversal on the matter that is recited in the record, went to the verge of the rule.

In this same connection it is argued that the prosecutor's argument to the jury at the close of the case was so intemperate as to amount to misconduct, but we do not find that the objection to the address, if any were made in the court below, was preserved in the record. No error can be founded on improper argument of counsel to the jury where no motion is made to strike it, or the court asked to instruct the jury to disregard it. *State v. Regan,* 8 Wash. 506, 36 Pac. 472; *State*

*v. Bailey*, 31 Wash. 89, 71 Pac. 715; *State v. Van Waters*, 36 Wash. 358, 78 Pac. 897; *State v. Wong Tung Hee*, 41 Wash. 623, 84 Pac. 596; *State v. Hawkins*, 27 Wash. 375, 67 Pac. 814; *Taylor v. Modern Woodmen of America*, 42 Wash. 304, 84 Pac. 867.

J. C. Robinson was called as a witness for the defense, and being interrogated by the defendant's counsel, made answers, as follows:

"Q. I hand you Plaintiff's Identification 1, known as the 'mortgage,' I will ask you if you are the notary who signed that as a witness · and acknowledged it? A. Yes, sir. Q. Did you notice that document at the time you signed it as a notary public? A. I did to a certain extent, yes, sir. Q. Are you 'able to state how much that mortgage was written for at that time? A. No, sir. Q. Do you know about how much it was? A. I could not swear to it. Q. Did you make any examination of the mortgage at that time? A. I usually make a pretty close scrutiny of every paper I sign. This has been a good while ago. Q. What do you say now as to whether that mortgage was written for two hundred and fifty dollars or twenty-two hundred and fifty dollars. A. I could not swear as to either, whether it was two hundred and fifty or twenty-two hundred and fifty. Q. You got no impression as to the amount of the mortgage from the examination you made? Mr. Smith. I object, he said he could not testify positively, it would be a mere guess. Objection sustained."

The refusal of the trial judge to permit an answer to the last question is assigned as error. But the ruling was proper. From the answers to the preceding questions it is plain that any answer the witness could have made to this would have thrown no light upon the question at issue.

A number of errors are assigned on the instructions given by the court, and the refusal to give certain others requested by the defendant. These it would be unprofitable to notice in detail. As a whole, the instructions fully and fairly state the law of the case to the jury, and cover all that is material in the requested instructions submitted by the defendant.

Counsel, however, argue one exception to the instructions

with much earnestness, and this we will briefly notice. The court in its charge first outlined to the jury the testimony alleged in the information to be false and perjured and to have been given by the defendant on the trial of the civil action between Maude Aubian and himself, and then instructed them that all the testimony imputed to the defendant was material to the inquiry the court was authorized and required to make in determining that action. Further on it outlined the several essential facts the jury must find in order to find the defendant guilty, the sixth of these being that the jury must find that the defendant, in the trial of the civil action, after being sworn, took the witness stand and gave the testimony imputed to him by the information, or gave "some substantial part of it." And during the remainder of the charge, in every place where the court had occasion to refer to the testimony given by the defendant as set forth in the information, it charged the jury to the effect that it was not necessary that they find that the defendant gave all the testimony imputed to him by the information, but that it was sufficient if they found that he gave some substantial part of the testimony so imputed to him. The defendant excepted to so much of the charge as stated that it was sufficient if the jury found that the defendant gave some substantial part of the testimony imputed to him in the information, but did not except to the sufficiency of the summary of the charge contained in the information made by the court, nor to the charge that all of the testimony imputed to the defendant in the information was material to the inquiry in the civil action.

It is argued that the portion of the charge excepted to is error, because it does not point out what part of the testimony the court deemed substantial, but allowed the jury to find the defendant guilty if they found that he testified to the immaterial matters which were imputed to him by the information. But as we say, the court charged that all of the testimony imputed to the defendant by the information

was material to the inquiry in the civil action.  As this was
not excepted to, it became the law of the case, and the ap-
pellant cannot now be heard to say that all of it was not
material.  This would be to mislead the trial judge and cause
trials to be had in the trial court on one theory and in this
court on another, a thing the law does not tolerate.  The
state did not have to prove all the matter imputed to the
defendant precisely as it had alleged it.  The substance of
the allegations was all that was required to be proved.  Hence,
when all the matter alleged was material, it was proper to
charge that the defendant could be convicted by proof of
some substantial part of the matter alleged.

A motion for a new trial was filed in the court below, based
upon a claim of misconduct of the regular judge of Walla
Walla county.  From the record it appears that the trial of
the defendant was presided over by a judge called for that
purpose from an adjoining county, and that the regular
judge was subpoenaed by the state as a witness on its be-
half.  The charge is that he intermingled with the other
witnesses on behalf of the state, and manifested such a friendly
regard and interest in their welfare as to give them a char-
acter and standing before the jury that they otherwise would
not have had and which they did not deserve.  The matter
seems to have been suggested to the presiding judge for the
first time after verdict, by affidavits filed with the motion for
a new trial.  It is our opinion that the objection was made
too late to avail the defendant, even conceding the objection
to be of merit.  The remedy for misconduct on the part of
any one during the progress of a trial is to call the attention
of the presiding judge to the alleged misconduct and move by
some proper procedure to have the matter corrected.  It is
not timely to await the result of the trial and then complain
only in the case of an adverse verdict.  Nor does it matter
that the guilty party may be the regular judge of the court
in which the trial was being had.  When merely attending
the court as a witness such judge is subject to all the penalties

of an ordinary witness. Whether, therefore, the alleged misconduct was sufficient to warrant the granting of a new trial we shall not inquire, as we think the question not properly in the record.

Since the appeal of this cause, and while the case was in this court, a second motion for a new trial was presented to the court below, overruled by that court, and certified to this court. The motion is based on an affidavit obtained from the prosecuting witness subsequent to the taking of this appeal. This motion is likewise untimely and cannot be considered here.

The judgment is affirmed.

DUNBAR, C. J., PARKER, and MOUNT, JJ., concur.