OF THE

## STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, 1908

AND IN THE SIXTY-SECOND YEAR OF THE STATE

---

· STATE OF IOWA v. NICK BLACKBURN, Appellant.

**Rape:** EVIDENCE: CORROBORATION. Where the complaining witness in a prosecution for rape definitely fixes the length of time between the alleged date of intercourse and the birth of a child as the result thereof, evidence tending to show that the time was within the possible period of gestation is admissible, as tending to corroborate her statement regarding the date of the alleged offense.

**Evidence:** INTRODUCTION OF MEDICAL WORKS. Where a physician has based his opinion wholly on his own experience and observation, he cannot be cross-examined on the teachings of medical authorities in order to get them before the jury; however, if he bases his opinion upon a particular treatise extracts from it may be introduced for impeachment purposes.

743

Evidence: CREDIBILITY OF PROSECUTRIX. The credibility of a prosecutrix for rape, as a witness, may be assailed the same as that of any other witness; which may be by a showing of bad moral character at the time of giving the testimony.

Evidence: OTHER ACTS OF INTERCOURSE. On a prosecution for rape evidence of the illicit intercourse of prosecutrix with others at a time when the child born to her could not have been conceived, should be excluded.

Rape: CORROBORATION: INSTRUCTION. The birth of a child to a prosecutrix for rape should not be considered as corroborative of her testimony that defendant had intercourse with her; and the error in failing to so instruct is not cured by a direction that such facts should be considered only as affecting her credibility as a witness, especially in view of a further instruction defining corroborative evidence to be such as tends to strengthen, sustain and corroborate the prosecutrix.

Rape: INCLUDED OFFENSES: INSTRUCTION. Ordinarily assault with intent to rape is an offense included in the charge of rape; and where the evidence is such that the jury might have resolved a doubt as to defendant's guilt of the graver charge into a conviction for the lesser offense, failure to submit the included offense is erroneous.

*Appeal from Marshall District Court.*— HON. G. W. BURNHAM, Judge.

TUESDAY, JANUARY 14, 1908.

THE defendant was convicted of having committed rape, and appeals.— *Reversed.*

*J. L. Carney,* for appellant.

*H. W. Byers, Attorney General,* for the State.

LADD, C. J.— The offense is alleged to have been committed August 12, 1902, and the prosecutrix attained the age of fifteen years October 12th of the same year. She gave birth to a child June 7, 1903, or two hundred and ninety-nine days after her alleged connection with the defendant. Her testimony was, in substance, that her home

was at Marshalltown, and that she had gone to Clemons on that day to visit a girl friend, who met her at the train; that they then went riding; that later in the evening her friend left for the buggy of an acquaintance, and defendant, to whom prosecutrix had been introduced shortly before, got into the buggy with her, that they rode together a short time, when, at his solicitation, but by mutual consent, they drove to the roadside and indulged in sexual intercourse on the greensward, though she was then having her menses; that during her week's stay she saw him several times, but not as a suitor or alone, and only once thereafter in the street of Marshalltown, and that she had never had sexual intercourse with any one else.

I. The child born to prosecutrix was normally developed, and the evidence on the part of the state was, in substance, that the usual period of gestation varies from two hundred and seventy-five to two hundred and eighty days, that it could extend to three hundred days, but that this was so unusual as to be improbable. Physicians called by defendant agreed as to the usual period, but were of opinion that, as sexual intercourse occurred during the menstrual period, the time of gestation did not exceed two hundred and eighty days, and could not have been two hundred and ninety-nine days. This evidence was admissible; for, if the birth of the child occurred within a possible period of gestation after the alleged connection, this tended to corroborate her story that intercourse happened at the date fixed upon by her. Whether the period might have been two hundred and ninety-nine days was peculiarly for the determination of the jury. See *Kesselring v. Hummer,* 130 Iowa, 145.

1. RAPE: evidence: corroboration.

II. After Dr. Conaway had testified in behalf of defendant as above stated, counsel for the State in cross-examination inquired concerning text-books written by Garrigues and Parvin. He testified that the work of the latter on obstetrics was standard authority, but of no more

value in opinions expressed than those of an individual with

2. EVIDENCE: introduction of medical works. like opportunities of observation. He was then asked: "Now, is it not announced in the leading text-books of the country and by leading lecturers on the subject, such as Garrigues and Parvin, that the length of gestation varies from two hundred and twenty to three hundred and twenty days from intercourse to the birth of the child? A. I don't know anything about the first authority you name there. I take issue with the second one on that proposition. Q. You take issue with the second man on that? If all the books in the country say that and lecturers, you take issue with them, do you? A. I take issue with the books and lecturers that say that just the same. Q. Simply because in your experience you have not found in your practice anything of that kind, is that why you take issue with them? A. I make the statement simply because of the fact that my experience says that what they say is not true. Q. So you think your experience is more valuable do you than the experiences and collected data of a large number of hospitals and of a great many learned authors? Do you assume that your experience is much better than theirs? A. It fixes my opinion much more firmly in my own mind than theirs; yes, sir. I don't know Winkle as an authority. I have heard of another you mention, but have not read him. Q. Now, he reports cases where the limit of the duration has been as high as three hundred and twenty days, does he not? A. I know nothing about the authority mentioned or what he says. There is a chapter in some books on obstetrics devoted to the long duration of pregnancy, but not in all. Q. So, regardless of the fact that it is generally treated upon, and regardless of the fact that eminent authorities announce the rule that the period will vary from two hundred and twenty to three hundred and twenty days, you say that that thing is impossible? A. You cannot find a case in any of those authorities in which they give."— Here he was reminded by the court that the

question was a little different, and on motion the answer
was stricken. The question was repeated, and he answered:
" I know of no authority that makes such a statement." He
was again reminded that the question did not ask him if he
knew, and upon his statement that he did not understand
was instructed in making answer to assume that the authori-
ties so reported when he replied that the authorities did not
do so. Again, he was directed to so assume, and finally an-
swered, after more parley, by saying: " I have answered
that by saying it is impossible." Appropriate objections
were interposed and overruled, apparently on the theory sug-
gested in rulings on a similar line of inquiry as to whether
conception may occur as long as four to six weeks after in-
tercourse; that the examination was proper as testing the
learning and skill of the doctor.

The manifest purpose, however, as plainly appears,
was to get the thought before the jury that all medical au-
thorities disagreed with the witness, even though he per-
sistently denied this, and was compelled to make answers on
that assumption. There had been no proof that any or all
the authorities, nor had he so stated, were as assumed, and
yet this witness was put in the attitude of arraying himself
against the writers on the subject, and this with the approval
of the court. He had not alluded to any authorities on his
direct examination as the witness had in *Cronk v. Wabash
R. Co.,* 123 Iowa, 349; nor had he based his opinion on what
he had learned from the books, as in *State v. Donovan,* 128
Iowa, 44, and for this reason asked as in *Hutchinson v.
State,* 19 Neb. 262 (27 N. W. 113), what the several au-
thorities taught. Medical works are not admissible in evi-
dence, and, when not alluded to in direct examination,
cannot be gotten before the jury, over objection, on cross-
examination, nor can this be done by indirection in assum-
ing their supposed teachings. *State v. Thompson,* 127 Iowa,.
440; *Marshall v. Brown,* 50 Mich. 148 (15 N. W. 55). In
*Conn. Life Ins. Co. v. Ellis,* 89 Ill. 512, the expert had said

that he had read text-books in order to be able to state why he had diagnosed the case as delirium tremens, and paragraphs were read to him and inquiry was made as to whether he agreed with authors.  This was approved on the ground that he had assumed to be familiar with the authors, and in no better way could his knowledge on the subject be tested. *Bloomington v. Shrock,* 110 Ill. 219 (51 Am. Rep. 679) was distinguished from the last case, in that the physician had neither quoted from nor referred to any book, and reading from text-books by him and asking if he agreed with them was adjudged error; the court saying: " Where a witness says a thing or a theory is so because a book says so, and the book, on being produced, is discovered to say directly to the contrary, there is a direct contradiction which anybody can understand.  But, where a witness simply gives his opinion as to the proper treatment of a given disease or injury, and a book is produced recommending a different treatment, at most the repugnance is not of fact, but of theory; and any number of additional books expressing different theories would obviously be quite as competent as the first.  But, since the books are not admissible as original evidence in such cases, it must follow that they are not admissible on cross-examination, where the introduction is not for the direct contradiction of something asserted by the witness, but simply to prove a contrary theory."  See, also, *Commonwealth v. Sturtivant,* 117 Mass. 122 (19 Am. Rep. 401); *Davis v. State,* 38 Md. 15; *State v. Winter,* 72 Iowa, 627; Lawson on Expert Ev. 214.

Of course, where a witness bases his opinion on a particular treatise, extracts from it may be introduced for impeachment purposes.  *City of Ripon v. Bittel,* 30 Wis. 614; *Pinney v. Cahill,* 48 Mich. 584 (12 N. W. 862); *Hess v. Lowrey,* 122 Ind. 225 (23 N. E. 156, 7 L. R. A. 90, 17 Am. St. Rep. 355); *Byers v. Railway,* 94 Tenn. 345 (29 S. W. 128).  In *Link v. Sheldon,* 64 Hun, 632 (18 N. Y. Supp. 817), the expert, after describing the proper treatment of a

swelling, was asked: " Is this view you have just expressed sustained amply by the authorities ? " An objection that this indirectly called for statements from medical books was held properly to have been sustained.

In the case at bar the physician had based his opinion solely on his own experience and observation, and therefore it was error to cross-examine him on the state of the medical authorities in order thereby to get their supposed teachings before the jury. The error was prejudicial; for, unless the period of gestation extended longer than the witness deemed possible, the defendant must have been acquitted. Moreover, the inquiry was not one depending so much on skill in the profession as upon observation in its practice. The difficulty in reaching satisfactory concluson in the matter lies in ascertaining accurate data. With animals it is easy to demonstrate the time which ordinarily does and may elapse between conception and birth, but in the case of human beings statements of the parties to the copulation in relation to this somewhat delicate subject must be relied upon, peculiarly subject to mistake as they are and warped as they often are by the desire to shield the one or the other, by making the time appear longer or shorter, as interest may dictate, than in the usual course of nature; so that, at best, the value of an expert's opinion whether in a book or from the witness' stand would depend on the data upon which based, and the wholesale reference to authorities by the county attorney was especially objectionable. The range of cross-examination in testing the learning and skill of one who is presented as an expert is largely discretionary, but under that pretext improper evidence or inferences from assumptions not supported by the record ought not to be brought before the jury, especially with the sanction of the court.

III. Another witness, after testifying to his residence in Marshalltown and his acquaintance with prosecutrix, was asked: " Do you know her general moral character in this

neighborhood?" An objection as immaterial and irrelevant and incompetent — especially in a case of this kind — was sustained, " if it refers to the present. It must be a time before the occurrence of this action, because the very fact of the intercourse under the circumstances have affected her moral character." That counsel for defendant then claimed the right to contradict prosecutrix's statement that she had never had intercourse before or since the act complained of did warrant the inference that the object of the question to which objection was sustained was not to prove her moral character as bearing on her credibility as a witness. This was manifest from the question and remark of the court indicated that it was so understood. She had testified as a witness, and her credibility as such might be assailed in any way that of any other witness may be attacked. The ruling was repeated upon a like inquiry being made of another witness and in both instances the court erred. *State v. Hart,* 67 Iowa, 142; *State v. Froelick,* 70 Iowa, 213; *State v. Seevers,* 108 Iowa, 738; *State v. Richards,* 126 Iowa, 497. The fact of bad moral character at the time of giving the testimony tends to discredit the witness, regardless of how this was brought about. *State v. Haupt,* 126 Iowa, 152; see section 4614, Code.

*3. EVIDENCE: credibility of prosecutrix.*

IV. Evidence of prosecutrix's alleged illicit relations with other young men, not at a time when the child might have been conceived, was excluded, and rightly so. That some one else may have had sexual intercourse with prosecutrix when under the age of consent furnished no excuse for defendant, and did not tend to shield him.

*4. EVIDENCE: other acts of intercourse.*

V. Appellant complains of the court's refusal to instruct the jury that, in " consideration of the evidence as to whether or not the testimony of Alta Pearl Scott is corroborated as to whether or not the defendant had sexual intercourse with her, the fact that a child was born to her is not a fact to be con-

*5. RAPE: corroboration: instruction.*

sidered as corroborative on that point." That this was a correct statement of the law is not questioned. *State v. Coffman,* 112 Iowa, 8. The object sought was to guard the jury against treating the birth of the child, being the natural sequence of intercourse with some one, as corroborative of prosecutrix's testimony, and the instruction or its equivalent should have been given. The instruction that, if the jury found defendant to have had connection with prosecutrix as alleged, " then it is immaterial whether or not the defendant is the father of the child born to her, except as bearing upon the question of the credibility of the witness [prosecutrix], and you should consider such evidence solely as affecting her credibility as a witness and for no further purpose," did not obviate the error. Possibly the jury might have understood therefrom that the circumstance could not be affective as corroboration, but for another instruction defined corroboration " as evidence strengthening, sustaining, and corroborating the evidence of Alta Pearl Scott, and, as bearing upon that question, you should consider the testimony of the other witnesses, together with all the facts and circumstances shown upon the trial and bearing upon that question and tending to connect the defendant with the commission of the offense." Surely a circumstance rendering her more credible would tend to strengthen her evidence, and the two paragraphs read together emphasized, rather than obviated, the necessity of giving the instruction requested.

VI. The court did not submit the included offense of assault with intent to commit rape, and this we think was error. As said in *State v. King,* 117 Iowa, 484, unless

6. RAPE: included offenses: instruction.

sexual intercourse was had or attempted, no crime was committed. Ordinarily the issue as to the guilt of the included offense should be submitted to the jury. *State v. Barkley,* 129 Iowa, 484. This case does not furnish an exception to the rule. The fact that prosecutrix and defendant had never met until a few hours before the alleged indulgence, the improbability

that the period of gestation continued two hundred and ninety-nine days, and the circumstance that there was no intimacy thereafter, together with the denial of defendant on oath, might have lead the jury to doubt whether intercourse occurred as alleged, and to have resolved that doubt in favor of defendant by finding that the assault to which she testified was not consummated and convicting him of the lesser offense. Some other matters are argued, but none calling for discussion.

Because of the errors pointed out, the judgment is *reversed,* and the cause *remanded.*