[No. 35569. *En Banc.* April 27, 1961.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE JENNEN, *Appellant.**

*Reported in 361 P. (2d) 739.

*Harold M. Gleeson* (of *Gleeson & Smith*) and *Carl Diana*, for appellant.

*John J. Lally, Frank H. Johnson,* and *George A. Kain,* for respondent.

HILL, J.—The defendant, George W. Jennen, was charged with carnal knowledge of a female, fifteen years of age and not his wife. The defense was that he did not know the prosecutrix and had never seen her before. From a judgment and sentence, entered on a verdict of guilty, he appeals.

The most devastating testimony, in view of the defense interposed, was that of a policewoman who, with the knowl-

edge and consent of the prosecutrix, listened over an extension telephone while the prosecutrix discussed her pregnancy with Mr. Jennen prior to his arrest. During two conversations he admitted his responsibility for her condition, fixed the date of their illicit relationship, cautioned her not to tell her parents, and promised to take care of her.

The admission of this testimony was assigned as error, as having been obtained by means of a wire tap in violation of the defendant's constitutional right to be secure in his person and house "against unreasonable searches and seizures" (United States constitution, amendment four) and not to be "disturbed in his private affairs, or his home invaded, without authority of law" (Washington constitution, Art. I, § 7); and a violation of 47 U. S. C. § 605 (Federal Communications Act), which provides that:

". . . no person not being authorized by the sender shall intercept any communication [by wire] and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person; . . ."

The Supreme Court of the United States has said:

"We hold that § 605 applies only to the exclusion in federal court proceedings of evidence obtained and sought to be divulged in violation thereof; it does not exclude such evidence in state court proceedings. Since we do not believe that Congress intended to impose a rule of evidence on the state courts, we do not decide whether it has the power to do so." *Schwartz v. Texas* (1952), 344 U. S. 199, 97 L. Ed. 231, 73 S. Ct. 232.

■ However, we are not concerned in this case with any question of the application of the Federal Communications Act to intrastate communications because the Supreme Court made it abundantly clear in *Rathbun v. United States* (1957), 355 U. S. 107, 2 L. Ed. (2d) 134, 78 S. Ct. 161, that there has been no "interception" within the purview of Section 605, *supra,* where an extension telephone was used with the consent of one of the parties to the conversation. The court stated (pp. 109, 110, 111):

"The telephone extension is a widely used instrument of home and office, yet with nothing to evidence congressional

intent, petitioner argues that Congress meant to place a severe restriction on its ordinary use by subscribers, denying them the right to allow a family member, an employee, a trusted friend, or even the police to listen to a conversation to which a subscriber is a party. . . .

" . . . The communication itself is not privileged, and one party may not force the other to secrecy merely by using a telephone. It has been conceded by those who believe the conduct here violates Section 605 that either party may record the conversation and publish it. The conduct of the party would differ in no way if instead of repeating the message he held out his handset so that another could hear out of it. We see no distinction between that sort of action and permitting an outsider to use an extension telephone for the same purpose.

" . . .

"Common experience tells us that a call to a particular telephone number may cause the bell to ring in more than one ordinarily used instrument. Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain. . . ."

The foregoing quotations dispose of any contention by the defendant in this case: that his constitutional right of privacy has been violated by the policewoman's listening in on an extension to conversations between the prosecutrix and himself, she having consented thereto.

 The information charged the defendant with carnal knowledge of Beverly Moreau. The state, on the basis of information gained after the trial began, was granted permission to add the words, "whose true name is Beverly Keegan," to the information. The circumstances were that Beverly Keegan's father had died when she was quite young. When she was four years old her mother had married Claude Moreau, and the child had, from that time forward, used the name Moreau. The defendant claimed surprise, and urges that the trial court abused its discretion in not granting a continuance and further erred in overruling his objections that the amendment was a matter of substance (not of form); and that there had been no ar-

raignment, plea, or opportunity to demur to the information thus amended. It is conceded that if there is a substantial amendment of an information it is necessary that the accused be rearraigned on the amended information. It is beyond cavil that there was no change in identity of the prosecuting witness. We not only have statutes (RCW 10.37.056(5) and 10.37.090) intended to relieve the administration of justice of the extremely technical objections referred to in *Garland v. State of Washington* (1914), 232 U. S. 642, 646, 58 L. Ed. 772, 775, but we have held in a case involving the rape of a nine-year-old child that,

" . . . Whatever name the child was generally known by was her proper designation in the information. Where a person upon whom a crime is committed is referred to by the name he or she is generally known by in the neighborhood where the crime is committed, the use of such name in the information is proper, and there can be no fatal variance upon proof that the baptismal name or true name is otherwise. Such is the undoubted rule. [fourteen cases cited]" *State v. Myrberg* (1909), 56 Wash. 384, 386, 105 Pac. 622.

Another case in point, which quotes one of the statutes to which we have referred, is *State v. Ewing* (1912), 67 Wash. 395, 121 Pac. 834, where the defendant was charged with first degree assault on Sylvia Russell, and the evidence tended to show that the person assaulted was Sylvia Ewing, the wife of the accused. Answering the claim that there was a fatal variance, we said (p. 397):

"Formerly, in the prosecution of offenses involving injuries to the person, it was necessary to set forth in the indictment the name of the person injured with strictness, and slight variances, if the names were not *idem sonans*, were held fatal. But the modern rule is to treat the question as one of identity, and if the offense is otherwise described with sufficient certainty to identify the act, to hold the variance immaterial, unless the misnomer actually misleads the defendant. 14 Ency. Plead. & Prac., 286. In this state such is the rule by statute. Section 2061 of Rem. & Bal. Code [now RCW 10.37.090], is as follows:

" 'When the crime involves the commission of or an attempt to commit a private injury, and is described with suf-

ficient certainty in other respects to identify the act, an erroneous allegation as to the person injured or intended to be injured is not material.' "

Had the state not amended the information in the present case, the evidence that the girl known in the community as Beverly Moreau was actually Beverly Keegan, would not have been a fatal variance; the amendment was not necessary.

■ The defendant has made no showing as to any way in which a continuance would have been of any avail to him, or of any way in which he was prejudiced by the failure to grant it. Any information concerning the age of the prosecutrix that the defendant could have secured, had he known the name of the prosecuting witness to be Keegan, was immediately made available to him by the production of her birth certificate. The amendment was a matter of form and not of substance.

■ It is urged that Claude Moreau, her stepfather, in whose home the prosecuting witness had lived for twelve years, should not have been permitted to testify as to her age. The case of *State v. Rackich* (1911), 66 Wash. 390, 119 Pac. 843, answers all of the contentions of the defendant on this issue. As we point out in that case, a witness may testify as to the ages of the other members of his family. Being a stepfather, such evidence as to the age of a stepchild may be weaker than that of the natural parents; however, any objection would go to its weight and not to its admissibility.

■ The defendant assigns error to the instruction on presumption of innocence, which told the jury that (instruction No. 7):

" . . . This presumption continues with the defendant throughout all the stages of the trial and every part of your deliberations until it has been overcome or removed by the evidence in the case beyond a reasonable doubt."

The contention is made that the word "until" is misleading and raises an inference that the defendant will eventually be proven guilty, and that the word "unless" is preferable as not raising such an inference.

We are not about to engage in a debate on semantics. The defendant admits that he has no case authority to sustain his contention that the use of "until" makes the instruction erroneous, or even that the use of the word "unless" is preferable.

The standard instruction on presumption of innocence uses "until." *State v. Tanzymore* (1959), 54 Wn. (2d) 290, 340 P. (2d) 178. Counsel for the defendant in their examination of prospective jurors, on at least four occasions, asked the following question or one comparable to it:

"You understand do you not, that throughout the course of this trial this man is presumed to be innocent until they overcome that presumption by evidence that is convincing beyond a reasonable doubt as to his guilt?"

We find no error in the instruction given.

The final assignments of error to be considered have to do with an instruction requested by the defendant: that the pregnancy of the complaining witness

". . . is not to be considered by you as any evidence of the guilt of the defendant of the charge of carnal knowledge as contained in the Information. In other words, the defendant is not accused in this action of being the father of the unborn child of the complaining witness and, you are not to consider the pregnancy of the complaining witness . . . in determining the guilt or innocence of the defendant as to the charge of carnal knowledge. . . ."

The court refused to give that instruction, but gave one which told the jury that the pregnancy of the complaining witness (instruction No. 12),

". . . is not in and of itself alone evidence that the defendant is guilty of the specific act of carnal knowledge charged in the information."

The defendant urges that the instruction given was erroneous and that his requested instruction should have been given.

 We are here concerned with a charge of carnal knowledge of a girl fifteen years of age, hence under the age of consent. No one would contend that the report of a doctor's examination of a prosecutrix, in such a case,

would not be admissible as part of the state's case to establish that an offense had been committed.

Here, no doctor needed to be called, because the pregnancy established that an offense had been committed, and, patently, it was evidence for the jury to consider in arriving at its verdict. The advanced state of pregnancy was corroborative both of the fact that an offense had been committed and of the time at which it had occurred. *State v. Winnett* (1907), 48 Wash. 93, 92 Pac. 904. See, also, *State v. Chambers* (1957), 50 Wn. (2d) 139, 309 P. (2d) 1055, 62 A. L. R. (2d) 1080, and *State v. Fetterly* (1903), 33 Wash. 599, 74 Pac. 810.

■■ Pregnancy is conclusive evidence of the guilt of someone; but it does not, of itself, tend to connect the defendant with the commission of the crime. Is it necessary or desirable to direct the attention of the jury to that particular circumstance, or is that a matter for argument to the jury?

A number of our cases, such as *State v. Chambers, supra,* discuss the circumstances under which evidence of the pregnancy of the prosecutrix, who is under the age of consent, is admissible as evidence tending to establish an element of the offense charged; but we are cited to no case, and a brief, independent search has revealed no Washington case which considers whether a defendant is entitled to a cautionary instruction that pregnancy, while evidence that a crime has been committed, does not, in itself, tend to connect the defendant with the commission of the crime. Cases from other states may be found, holding that, where requested, it is error not to give an instruction that in considering whether or not the testimony of the prosecutrix

" ' . . . is corroborated as to whether or not the defendant had sexual intercourse with her, the fact that a child was born to her [or she is pregnant] is not a fact to be considered as corroborative on that point.' "

*People v. Cassidy* (1918), 283 Ill. 398, 403, 119 N. E. 279; *State v. Cotter* (1911), 152 Iowa 398, 132 N. W. 760; *State*

*v. Blackburn* (1908), 136 Iowa 743, 114 N. W. 531; and *State v. Thomas* (1928), 38 Wyo. 72, 264 Pac. 1017.

It is to be noted that in each of these states there is a requirement of corroboration of the prosecuting witness as to the actual act of intercourse, which was the basis of the charge. As was said in *State v. Blackburn, supra* (p. 751),

" . . . The object sought was to guard the jury against treating the birth of the child, being the natural sequence of intercourse with some one, as corroborative of prosecutrix's testimony, and the instruction or its equivalent should have been given. . . ."

In this state, since the enactment of Laws of 1913, chapter 100 (repealing Rem. & Bal. Code, § 2443), corroboration of the prosecutrix is not required. *State v. Thomas* (1958), 52 Wn. (2d) 255, 324 P. (2d) 821; *State v. Clayton* (1949), 32 Wn. (2d) 571, 202 P. (2d) 922; *State v. Davis* (1944), 20 Wn. (2d) 443, 147 P. (2d) 940; *State v. Morden* (1915), 87 Wash. 465, 151 Pac. 832.

When, therefore, the evidence of the prosecutrix is, if believed by the jury, sufficient to convict the defendant, there is doubt in our minds as to whether such a cautionary instruction serves any purpose except to support the defendant's argument to the jury that pregnancy proves nothing except that somebody had intercourse with the prosecutrix.

In any event, the instruction requested is argumentative, and to the extent that it would have told the jury that pregnancy "is not to be considered by you as any evidence of the guilt," it was too broad. As was pointed out in *State v. Baker* (1939), 60 Idaho 488, 490, 92 P. (2d) 133,

" . . . While pregnancy might not point to the particular person accused of the crime . . . it is evidence the crime was committed, hence the instruction was too broad and therefore properly refused. . . ."

The cautionary instruction given: that the fact of pregnancy is not, in and of itself, evidence that the defendant is guilty of the specific act of carnal knowledge charged in

the information, is a correct statement; and it was all, if not more, than the defendant was entitled to have.

We find no error in the record. The judgment and sentence appealed from are affirmed.

ALL CONCUR.

*Reported in 361 P. (2d) 571.