[No. 2572–2.   Division Two.   November 8, 1978.]

THE STATE OF WASHINGTON, *Respondent*, v. CLAUDIA M. BONNER, *Appellant*.

784

*William L. Britton,* for appellant.

*Patrick D. Sutherland, Prosecuting Attorney,* and *Edward F. Schaller, Jr., Deputy,* for respondent.

DORE, J.—Defendant was convicted of two crimes, unlawful possession of a controlled substance with intent to deliver, and unlawful delivery of a controlled substance.

### ISSUES

ISSUE 1: Whether the trial court erred in failing to grant defendant's motion for a change of venue based on claimed prejudicial pretrial publicity.

ISSUE 2: Was the defendant prejudiced and unable to have a fair trial because she was paraded while handcuffed in front of the jury panel in the hallway outside the courtroom?

ISSUE 3: Whether the trial court erred in admitting the testimony of a police officer outlining the history of the drug problem and drug enforcement in the country.

ISSUE 4: Whether the trial court erred in finding informant was not an "absent witness"; refusing an "absent witness" instruction, and restricting defendant's counsel on the subject in closing argument.

Issue 5: Whether the trial court erred in sentencing defendant to consecutive rather than concurrent terms of imprisonment.

FACTS

In May of 1976, Dennis Cunningham, an investigator for the Washington State Patrol Drug Assistance Unit, collaborated with a paid informant named Fromm, to purchase drugs. At 2:30 a.m. on June 11, 1976, Cunningham and Fromm entered a residence in Olympia, Washington, where they were introduced to the defendant. Cunningham expressed an interest in purchasing cocaine and defendant agreed to sell him some for $110 per ounce. Cunningham paid the money and he was instructed to return at 4:30 a.m. for the pickup. Upon his return defendant gave Cunningham a plastic bag containing cocaine. Defendant was arrested a week later at her Olympia residence.

On Monday, June 21, 1976, an article appeared in The Daily Olympian (a local newspaper serving the area), naming the defendant among numerous persons arrested as part of a "drug raid." The article appeared under a 3/4–inch heading captioned "Weekend Drug Raids Net Pretty Good Dealers." The article itself was spread across three columns, the width of a page. Pertinent parts of the article pertaining to the defendant stated:

Released from jail yesterday were: Richard A. Watts, 26, 1215 Bowman St., two counts of delivery and two counts of possession with intent to deliver ($1,500 bail); Dennis B. Parmelee, 25, Rainier, unlawful delivery ($1,000); Raylene M. Shunkwiler, 23, 948 Nell St. NE, unlawful delivery ($1,000); James W. Powell, no age given, 5895 Capitol Boulevard, delivery of a controlled substance ($2,000); Jay B. Woods, 19, Tenino, attempted delivery ($1,000), and Arnold L. Wellman, 19, Route 8 (Box 284); unlawful delivery ($1,500).

Those arrested and being held in lieu of bail include: Frederick R. Doughty, Jr., 21, 1443 Brown St. NE, delivery ($1,000); James W. Showalter, 38, 1110 East Ave., possession and delivery ($2,500); Elden L. Brown, 21, Route 1 (Box 454–D3) unlawful delivery, ($2,000); Theresa G. Farrington, 21, 512 Bigelow Ave., possession

with intent to sell ($2,500); Shannon V. Westcott, 24, Route 5 (Box 234), three counts of delivery ($10,000); Della M. Bell, 20, 511 South Sawyer St., possession with intent to deliver and delivery ($1,000); William P. Harrington, 20, 401 N. Lybarger St., conspiracy to deliver and second degree burglary ($3,500); Douglas L. Andersen, 26, 420 Steele St., two counts of possession and two counts of delivery ($10,000).

Being held for investigation were: Brian T. Kirk, 22, Tacoma, unlawful delivery; *Claudia M. Bonner, 32, 503 N. Puget St.,* unlawful delivery; Emory J. Treadaway, 21, 1024 Prospect Ave., unlawful possession; Gary L. Kelly, 20, Route 3 (Box 381), unlawful possession and delivery; Mark G. Lee, 19, 2411 State Ave. E., delivery; Lawrence W. Sweeney, 21, Route 18 (Box 153), unlawful delivery; Robert W. Burdick, 25, 1807 7th Ave. E., three counts delivery and three possession with intent to deliver, and John A. Hanson, 20, 5118 Brassfield Ave., unlawful delivery.

A total of 30 officers from Lacey, Tumwater, Olympia and Thurston County were used in raids.

Arrests began at 5 a.m. Saturday and 3 a.m. Sunday.

(Italics ours.)

In a subsequent article (August 5, 1976), 4 days before trial, the Chief Deputy Prosecuting Attorney Schaller was quoted in The Daily Olympian concerning the drug raid, and defendant was again mentioned by name. The article appeared under a 3/4–inch heading captioned "Drug Raid Didn't Net Much 'Big Stuff'" and pertinent parts of this article stated:

Chief Deputy Pros. Atty. Ed Schaller said last week he thought the raid was a step in the right direction. "Although the amount of drugs may not have been great," Schaller said, "I think the people trafficking the drugs were dealing more than that."

He said he thinks the drug problem in this county is more serious than it used to be. "There may not be more drugs than in the past," Schaller said, "but there are more serious drugs."

The most impressive point of last month's raids, which amplified Schaller's remarks, was the variety of drugs confiscated.

While Redmond's claims that most of those arrested "were dealing heavily in heroin, cocaine and amphetamines," only one of those arrested faces a charge that indicates he might be considered a major dealer.

Six were charged in heroin–related episodes. One of them, Michael Krantz, is charged with delivering 26.5 grams of heroin, probably worth more than $1,000.

But it is significant that five were charged with crimes involving heroin, including Shannon V. Westcott (2.0 grams), Thomas C. Van Wey (.9), Theresa Farrington (.8), Alan Wentjar (.2) and Douglas Andersen (1.4).

Persons knowledgeable about the area's drug scene have told The Daily Olympian they don't believe most of those arrested are major dealers in heroin.

Those charged with amounts as reported by the sheriff's office include: *Claudia Bonner* (cocaine, .4 grams), Eldon Brown (cocaine, unknown amount), Robert W. Burdick (methyl phenidate, 4 tablets), Della Mae Bell (LSD, five dots), James Showalter (methadone, an unknown amount) and Mrs. Anderson (methamphetamines, .3 grams).

Jay B. Woods was charged with attempt to conspire to deliver methamphetamines.

(Italics ours.)

Defendant moved for a change of venue based on prejudicial pretrial publicity alleged to be contained in these articles. The trial court denied the motion.

During voir dire, only two prospective jurors recalled reading the subject Daily Olympian articles. Both jurors, however, stated that they could be fair and impartial jurors and give the defendant a fair trial. Defense counsel neither challenged them for cause, nor exercised either of his two remaining peremptory challenges.

At trial the prosecution failed to produce Fromm, the paid informant, as a witness. Officer Cunningham explained Fromm's absence by relating that a threat had been made against Fromm's life and that he had left the area. The defendant proposed an "absent witness" instruction which was rejected. Defense counsel, during closing argument, was prohibited from alluding to Fromm as the absent witness.

The jury convicted the defendant. On sentencing, the trial court imposed two sentences of not more than 10 years and provided that each sentence would run consecutively.

## DECISION

ISSUE 1: Denial of motion for change of venue.

■ Due process requires a change of venue when the probability of prejudice is shown. Actual prejudice is not required. The trial court's decision upon a motion for change of venue will only be disturbed on a showing of an abuse of discretion. *State v. Crudup*, 11 Wn. App. 583, 586, 524 P.2d 479 (1974).

In *State v. Crudup, supra* at 587, this court outlined nine criteria or factors generally utilized by courts in determining the propriety of an order granting or denying a motion for a change of venue based on alleged prejudicial pretrial publicity. They are:

(1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

In *State v. Valenzuela*, 75 Wn.2d 876, 454 P.2d 199 (1969), the Supreme Court affirmed a denial for a change of venue where a county sheriff invited television stations to film a raid, and where the arrest and booking of subjects were shown on television.

In *State v. Moxley*, 6 Wn. App. 153, 491 P.2d 1326 (1971), the facts were similar to the subject case wherein this court affirmed the trial court in denying motions for

change of venue and for continuance on account of pretrial publicity. The court stated at page 159:

Defendant's second motion filed 5 days before trial was based on a 4–paragraph newspaper story in the same newspaper concerning a second fire which burned down the dwelling and called attention to the family's need for assistance. There were also daily broadcasts over a radio station in the vicinity several times each day containing the same information as contained in the newspaper story but adding that the house was uninsured. The trial court denied this motion. At trial the defendant renewed his motion and his renewed motion was denied. On voir dire examination, preliminary questions were asked about whether the respective jurors had heard about the case or had any preconceived bias or prejudice. Some jurors had not heard about the fire. Furthermore, nothing in the answers of the individual jurors indicated even probable bias or prejudice against the defendant. The court concluded "Nobody indicates that would be a problem." The granting of a motion for change of venue or continuance on account of pretrial publicity is within the trial court's discretion, reviewable only for abuse. *State v. Malone,* 75 Wn.2d 612, 452 P.2d 963 (1969); *State v. Hawkins,* 70 Wn.2d 697, 425 P.2d 390 (1967). *See also State v. Stiltner,* 4 Wn. App. 33, 479 P.2d 103 (1971); *State v. Valenzuela,* 75 Wn.2d 876, 454 P.2d 199 (1969). We find no abuse of discretion.

In *State v. Snook,* 18 Wn. App. 339, 567 P.2d 687 (1977), this court affirmed a denial of change of venue based on pretrial newspaper articles. Judge Munson, speaking for the court, stated at page 349:

As stated in *State v. Crudup,* 11 Wn. App. 583, 586, 524 P.2d 479 (1974), due process of law requires the granting of a motion for a change of venue when there is a probability of prejudice shown. Actual prejudice need not be shown. Where the circumstances involve a probability that prejudice will result, it is to be deemed inherently lacking due process. *State v. Stiltner,* 80 Wn.2d 47, 54, 491 P.2d 1043 (1971). The trial court's decision on a motion for a change of venue will not be disturbed absent an abuse of discretion. The nine criteria are set out in *State v. Crudup, supra.* In that case a motion for change of venue was denied, even though the news articles, as

outlined in the opinion, were much more inflammatory than in the instant case. Defendant did not exhaust his peremptory challenges in *Crudup,* nor in the case at bench. We find no probability of prejudice and no abuse of discretion in denying defendant's motion for a change of venue.

The two articles in the subject case were published in The Daily Olympian, a daily newspaper, with general circulation in the city of Olympia and Thurston County, having a total population of approximately 80,000. Although The Daily Olympian is the only local newspaper, it competes with the large dailies from Seattle and Tacoma who are able to deliver their product within hours after publication. The area is also served by the large television and radio stations located in Seattle and Tacoma. A fair–minded person would be forced to conclude that the local paper in such a competitive news market has a limited impact in informing the citizens of Olympia and Thurston County concerning current events. As Olympia is the seat of government in our state, there is a continual ingress and egress of citizens as administrations change. Many residents of Olympia feel they are on temporary assignment and maintain close ties to their former local communities, literally ignoring local matters in Olympia, such as reflected in The Daily Olympian. Consequently it was not surprising to find on voir dire in the subject case that only two of the entire jury panel were aware of the article.

The articles themselves merely list the defendant's name among many others arrested for the same or related drug offenses. Such articles do not focus on the defendant, or call special attention to her. A careful reading of the record and studying of the articles, lead us to conclude as the trial judge did, that such articles are noninflammatory and did not prevent defendant from having a fair trial.

The two jurors that were accepted on the defendant's jury, although they readily admitted they read the articles, said they could be fair and impartial jurors. The defendant and her attorney could have removed them by exercising

their two unused peremptory challenges, but for some reason known only to them, they let them remain on the jury. That was their decision. Defendant cannot now complain she was prejudiced by these articles. We find that the trial judge did not abuse his discretion in the subject case in denying defendant's motion for a change of venue.

Defendant also asserts that the newspaper quotation of the chief deputy prosecuting attorney violated (CPR) DR 7–107(B)(6) whose pertinent portion states:

(B) A lawyer . . . associated with the prosecution . . . of a criminal matter shall not, from the time of the filing of a[n] . . . information . . . until the commencement of the trial . . . make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication and that relates to:

. . .

(6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.

We find that the deputy prosecutor did not deliberately violate the Canons of Legal Ethics by commenting on the case to a reporter with the hope that a story would be written and released shortly before defendant's trial, and consequently make his job easier to get a conviction. We believe it happened inadvertently with the deputy apparently thinking he was speaking to the reporter off the record.

However, in the future he, as well as all prosecutors and their assistants, should strictly adhere to the mandate of (CPR) DR 7–107(B)(6) pertaining to extrajudicial statements.

IssUE 2: Handcuffing of defendant.

Defendant was handcuffed when she was brought to court, but the handcuffs were removed when she was taken inside the courtroom. *State v. Williams,* 18 Wash. 47, 50 P. 580 (1897), cited by defendant, does not apply in the subject case. In *State v. Williams, supra,* the defendant was

shackled while in the courtroom, during the trial, and in view of the jury.

■ In the subject case, defendant contends juror prejudice should be presumed, asserting the prosecution deliberately intervened and insisted that the handcuffed defendant be led past prospective jurors. There is nothing in the record to support defendant's contention. The trial judge in the subject case stated:

> I will have our bailiff instruct the Sheriff's Office that she be handcuffed, and be brought to the front of the courtroom, at which time, with surveillance, and with the jury panel sitting in the courtroom, they will be removed, and she will be led into the courtroom under the bailiff and a deputy sheriff to the counsel table. That ought to alleviate both problems.
>
> So she will be brought to the threshold handcuffed, and she will be brought into the courtroom without handcuffs.

His actions appear to be clearly within the bounds of his discretion. *See State v. Basford,* 1 Wn. App. 1044, 467 P.2d 352 (1970).

■ In addition, there is no evidence that any of the jurors saw the defendant handcuffed. A transcript of the voir dire examination does not disclose whether any of the prospective jurors were even asked if they saw the defendant handcuffed. Assuming some of the jurors had seen the defendant handcuffed, defense counsel could have requested the court to admonish them from drawing any inference from the fact that defendant had been handcuffed. However, no application for admonition or a requested jury instruction was ever requested. We believe *State v. Berkins,* 2 Wn. App. 910, 471 P.2d 131 (1970), is dispositive of this point. The court in *State v. Berkins, supra* at 919 stated:

> [T]he court could have been requested to promptly instruct the jury panel that no inference of guilt was to be drawn from the manacling incident. *State v. Ollison,* 68 Wn.2d 65, 411 P.2d 419 (1966); *State v. Sawyer,* 60

Wn.2d 83, 371 P.2d 932 (1962). When error can be obviated by jury instruction it is the defendants' duty to request such an instruction. If he does not do so, the error is deemed waived. *State v. Ollison, supra; State v. Smails,* 63 Wash. 172, 115 P. 82 (1911); *Spratt v. Davidson,* 1 Wn. App. 523, 463 P.2d 179 (1969). *See Hogenson v. Service Armament Co.,* 77 Wn.2d 209, 216, 461 P.2d 311 (1969).

*See Wright v. Texas,* 533 F.2d 185, 187 (5th Cir. 1976), wherein the court stated:

[W]e think that the petitioner waived error by failure to either examine the jurors for the purpose of excluding from the jury panel any members who may have viewed him in handcuffs, or to request an instruction from the court that handcuffs are no indication of guilt.

This issue could have easily been avoided by the defendant simply draping her coat or sweater over the handcuffs. We find no error.

ISSUE 3: Admission of officer's testimony on general history of drug problem.

Defendant contends that a portion of the testimony of Officer Dobbs giving the history of drug problems in Thurston County should not have been admitted as it was irrelevant or at best cumulative of evidence offered by the State's other witnesses and its sole purpose was to prejudice the defendant.

█ The determination of relevancy of evidence rests in the discretion of the trial judge. *State v. Rolax,* 7 Wn. App. 937, 503 P.2d 1093 (1972); *State v. Schrager,* 74 Wn.2d 75, 442 P.2d 1004 (1968).

The trial judge allowed the introduction of such testimony on the ground that it was proper as a method of establishing the background to the investigation which ultimately led to the defendant's arrest. We find the trial court did not abuse its discretion in this matter.

ISSUE 4: Was informant absent witness?

Defendant contends a community of interest existed between the absent witness Fromm and the State, and that

such witness was peculiarly available to the prosecution. Defendant further contends the State failed to explain the witness' absence. She also claims error by the court in refusing her an absent witness instruction.

*State v. Davis,* 73 Wn.2d 271, 276, 438 P.2d 185 (1968) provides that where evidence which would properly be part of a case is within the control of the party whose interest it would naturally be to produce it, and without a satisfactory explanation the party fails to do so, the jury may draw an inference that such evidence would be unfavorable to that party. In *Davis,* the defendant on appeal argued that an absent witness instruction should have been given since the State failed to call a witness who could verify the testimony (which the defendant denied) that the defendant had effectively waived his constitutional rights prior to giving an admission to police. It was undisputed, in *State v. Davis, supra,* that the absent witness (another police officer) was present but did not participate in the conversations when the defendant purportedly waived his constitutional rights.

In *Davis* the court analyzed the absent witness rule on pages 276–79:

> As was said in *McClanahan v. United States,* 230 F.2d 919, 926 (5th Cir. 1956):
>
>> . . . "the availability of a witness is not to be determined from his mere physical presence at the trial or his accessibility for the service of a subpoena upon him. On the contrary, his availability may well depend, among other things, upon his relationship to one or the other of the parties, and the nature of the testimony that he might be expected to give . . . ." *Deaver v. St. Louis Public Service Co.,* Mo.App., 199 S.W.2d 83, 85.
>
> For a witness to be "available" to one party to an action, there must have been such a community of interest between the party and the witness, or the party must have so superior an opportunity for knowledge of a witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for such party except for the fact that his testimony would have been damaging. The rationale behind

this definition of the "availability" of a witness is aptly summarized in 5 A.L.R.2d 895 (1949), as follows:

If such an inference is to be drawn it becomes necessary to determine which of the parties to the action should have called the witness in order to determine who should bear the onus of the adverse inference or presumption. . . . one of the factors which determines this question is the relationship which the potential witness bears to the parties, the logical inference being that a person will be likely to call as a witness one bound . . . [to] him by ties of interest or affection unless he has reason to believe that the testimony given would be unfavorable, and that a party closely connected with the witness will be *more likely to be able to determine in advance what his testimony will be if he is called.* On the other hand, a party should not be required to call a witness likely to favor his opponent's case, *since by so doing he must ordinarily vouch for his credibility and lose his opportunity to impeach or cross–examine the witness.* (Italics ours.)

. . .

The state's next argument is that the missing witness rule does not apply in the instant case because the testimony of the uncalled witness, the undersheriff, would merely have been "cumulative." The state relies on *Wright, supra* [*Wright v. Safeway Stores, Inc.,* 7 Wn.2d 341, 109 P.2d 542 (1941)], in which we said at 347, quoting from 10 R.C.L. 886 § 33: (*cf.* 29 Am. Jur. 2d *Evidence* § 186 (1967))

"The presumption arising from a failure to call a witness applies only to witnesses . . . whose testimony would not be trivial, or to be classed as merely cumulative, but important and necessary."

Similarly, Professor Wigmore has stated in 2 Wigmore, Evidence § 287 (3d ed. 1940):

[I]t seems plain that possible witnesses whose testimony is for any reason comparatively *unimportant,* or *cumulative,* or *inferior* to what is already utilized, might well be dispensed with by a party on general grounds of expense and inconvenience, without any apprehension as to the tenor of their testimony.

But, like all general rules, this limitation on the missing witness rule has its exceptions. Wigmore qualifies this limitation by saying that it depends on the facts of each

case for its application and that it "should not be enforced with any strictness; otherwise it would become practically objectionable . . . ." Wigmore, *supra,* § 287. Wigmore further indicated that, although "it is commonly said . . . that the prosecution's failure to call an eyewitness is not open to inference" since no rule requires "that all *eye–witnesses* shall be called;" nevertheless *"there can be no such general principle, for sometimes the inference would be well founded."* (Italics ours.) Wigmore, *supra,* § 290(1). Had the potential testimony of the undersheriff related to some minor factual issue or even to one of the elements of the crime with which Belknap is charged, we could well accept the state's argument on this point. . . .

Finally, the state argues that Belknap failed to make any showing or contention that the testimony of any witness, who could testify as to any material facts, was being willfully withheld, relying on *State v. Baker,* 56 Wn.2d 846, 859, 355 P.2d 806 (1960), in which we held that

> The inference that witnesses available to a party and not called would have testified adversely to such party arises only where, under all the circumstances of the case, such unexplained failure to call the witnesses creates a suspicion that there has been a willful attempt to withhold competent testimony. *Wright v. Safeway Stores, Inc.,* 7 Wn. (2d) 341, 109 P. (2d) 542 (1941), 135 A.L.R. 1367.

*See, also, State v. Nelson,* 63 Wn.2d 188, 386 P.2d 142 (1963).

■ The role of the absent witness Fromm was that of assisting Officer Cunningham in drug investigations by introducing him to dealers of narcotics. Undoubtedly there was a community of interest between informant Fromm and the State for both were interested in a common scheme to make drug purchases from dealers, and arrest them in the act of selling the contraband. However, in the subject case, Fromm's absence was explained by testimony that his life had been threatened and that he had fled from the community. The prosecutor, an officer of the court, advised that had he known where Fromm was at the time of the trial, he would have called him as the State's witness.

A threat against one's life all too often becomes a reality in drug cases, especially against informers or "stoolies" as some call them. The court, in its discretion, accepted the explanation of the State that Fromm had fled the community and that they didn't know where he was. We hold that the trial court properly exercised its discretion in the matter, finding Fromm was not an "absent witness."

■ The court correctly held Fromm was not an absent witness and that defendant was not entitled to an absent witness instruction, nor would she be able to characterize Fromm as an "absent witness" in closing argument. In *State v. Lane*, 4 Wn. App. 745, 749, 484 P.2d 432 (1971), this court stated that

> The scope of closing argument is a matter for the exercise of discretion by the trial court and improper argument by counsel in response to that of another may not be assigned as error. *Cranford v. O'Shea*, 75 Wash. 33, 134 P. 486 (1913).

ISSUE 5: Sentencing.

The defendant in this case was convicted of both unlawful possession of a controlled substance with intent to deliver and of delivery of that same controlled substance. Defendant therefore contends that her convictions are merged for purposes of sentencing and that the trial court's consecutive sentences in the instant case were without statutory authority. For the reasons set forth below, we agree.

■■ In *State v. Rhodes*, 18 Wn. App. 191, it was held that possession of a controlled substance is a lesser included offense of the crime of delivery of the same controlled substance. When a finding of guilty is made regarding both the greater and the lesser included offense, the entry of judgment on the lesser offense is merged into the finding of guilty of the greater offense.

In the present case, application of this rule requires that the conviction and sentence on the crime of unlawful possession of a controlled substance with intent to deliver be reversed. However, the judgment and sentence based on the crime of unlawful delivery of a controlled substance

remains in effect. The net result of our decision is therefore that the defendant faces a single 10–year sentence.

Affirmed in part and reversed in part.

PEARSON, C.J., and REED, J., concur.

Reconsideration denied March 1, 1979.

Review denied by Supreme Court May 25, 1979.