[No. 3013–2.   Division Two.   July 31, 1979.]

THE STATE OF WASHINGTON, *Respondent*, v. PEDRO P. BONILLA, *Appellant*.

*Clifford R. Kuhn* and *Roethler & McCulloch,* for appellant.

*Henry R. Dunn, Prosecuting Attorney,* and *Randolph Furman, Chief Deputy,* for respondent.

REED, J.—Pedro Bonilla appeals from a conviction for second–degree murder, RCW 9A.32.050(1)(a). He objects to the trial testimony of police officers who listened on an extension telephone in the police station when he called the police dispatcher and confessed to murdering his wife. He also challenges the trial court's refusal to grant a change of venue despite pretrial publicity. We affirm the conviction.

On October 17, 1977, Bonilla telephoned the Kelso Police Department from an unidentified location and told the dispatcher that he had shot and killed his wife the night before. He said her body could be found at their home in Kelso. The telephone call was not recorded, but the dispatcher summoned the police chief to listen to the conversation on an extension line in the station.

Bonilla called at least two more times that day, repeating his murder confession and telling police where to find the rifle he had used. The calls were monitored by officers on the extension line. During the third conversation Bonilla was told there was another officer on the line, and he agreed to answer questions from that officer.

On October 19, 1977, Bonilla called again, saying he was in Puerto Rico and that he intended to return to Kelso if the police would pay for his ticket and meet him at the airport. Kelso police officers met Bonilla at the Portland International Airport on October 23, 1977, and drove him back to Kelso, where he made both a written and oral tape–recorded confession.

On November 13, 1977, Bonilla pleaded not guilty to a charge of second–degree murder. On December 20, 1977, his

motion for a change of venue was denied. He was convicted by a jury on January 19, 1978, and later sentenced to a 20-year prison term.

On appeal Bonilla does not deny that he volunteered his confession over the telephone to the police dispatcher; nor does he challenge the veracity of his later written and tape-recorded confessions. Instead, he objects only to the incriminating testimony by the police officers who overheard his original confession on the police station extension telephone. He argues that the use of the extension line violated his privacy under the state wiretapping laws, RCW 9.73, and article 1, section 7 of the state constitution.

We fail to see how the wiretapping law prohibits the police officers' use of the extension telephone in this case. The relevant wiretapping statute, RCW 9.73.030, provides in part:

> Except as otherwise provided in this chapter, it shall be unlawful for any individual, partnership, corporation, association, or the state of Washington, its agencies, and political subdivisions *to intercept, record or divulge* any:
> (1) *Private communication* transmitted by telephone, telegraph, radio, or other device between two or more individuals between points within or without the state *by any device electronic or otherwise designed to record and/or transmit said communication* regardless how such device is powered or actuated, without first obtaining the consent of all the participants in the communication;

(Italics ours.) Information gained in violation of RCW 9.73-.030 generally is inadmissible as evidence in court. RCW 9.73.050.

There was no violation of RCW 9.73.030(1) in this case because police did not "[1] intercept, record or divulge any . . . [2] private communication . . . [3] by any device electronic or otherwise designed to record and/or transmit said communication."

▮ First, there was no "interception" of Bonilla's telephone conversation for purposes of the statute because

police overheard the conversation on an extension telephone with the consent of the police dispatcher. We note that the United States Supreme Court has held that where one party consents to the use of an extension line, there is no "interception" for purposes of the Federal Communications Act, 47 USCA § 605 (1962). *Rathbun v. United States*, 355 U.S. 107, 2 L. Ed. 2d 134, 78 S. Ct. 161 (1957). *See generally* Annot., 9 A.L.R.3d 423 (1966). Although the Washington wiretapping statute does not define the term "interception," the state Supreme Court adopted the *Rathbun* definition in *State v. Jennen*, 58 Wn.2d 171, 173–74, 361 P.2d 739 (1961). In *Jennen*, the court held that there is no interception for purposes of the federal Fourth Amendment right of privacy where an extension telephone is used with one party's consent. In the absence of statutory language to the contrary, we are constrained to follow *Jennen*. We hold that there was no interception, for purposes of RCW 9.73.030(1), when Kelso police officers overheard Bonilla's murder confession on the extension telephone with the dispatcher's consent.

■ Second, there was no "private communication" between Bonilla and the police dispatcher that would merit the protection of RCW 9.73.030(1). The statute does not define the term, "private communication," but the term, "private," has been defined for purposes of that statute as

> secret . . . intended only for the persons involved (a conversation) . . . holding a confidential relationship to something . . . not open or in public."

*State v. Forrester*, 21 Wn. App. 855, 861, 587 P.2d 179 (1978), quoting *Webster's Third New International Dictionary* (1969). A person's right to keep private his affairs—including his conversation—depends on whether he has a reasonable expectation of privacy at the time and under the circumstances involved. *See Jeffers v. Seattle*, 23 Wn. App. 301, 316, 597 P.2d 899 (1979) and cases cited therein; W. Prosser, *The Law of Torts* 808 (4th ed. 1971). Telephone conversations by nature afford less privacy than face–to–

face conversations. It is stated in *Rathbun v. United States, supra* at 111–12:

Each party to a telephone conversation takes the risk that the other party may have an extension telephone and may allow another to overhear the conversation. When such takes place there has been no violation of any privacy of which the parties may complain.

*See Jeffers v. Seattle, supra* at 315; *State v. Jennen, supra* at 174.

■ It would strain reason for Bonilla to claim he expected his conversations with the police dispatcher to remain purely between the two of them. There is no question that Bonilla's primary purpose was to notify the entire police department of his guilt. It did not matter to him which officer he contacted. In fact, he willingly answered questions from several officers during his series of telephone calls. We hold that Bonilla had no reasonable expectation of privacy in making the telephone calls to the police station, and thus his calls were not "private communications" for purposes of RCW 9.73.030(1).

■ Third, we find no evidence regarding the requirement that there be a "device electronic or otherwise designed to record and/or transmit" the telephone conversation. Police overheard the conversation on an ordinary extension telephone, without benefit of a recording or transmitting device.

In short, there can be no violation of RCW 9.73.030(1) in the absence of an illegal "interception," a "private communication" or the use of a recording or transmitting device.

In making his wiretapping claim, Bonilla misplaces reliance on *State v. Wanrow*, 88 Wn.2d 221, 559 P.2d 548 (1977). In *Wanrow*, the court held that a recorded crime report, taken from the police crime–check telephone line, was a "private communication" within the meaning of RCW 9.73.030(1) and thus inadmissible in court pursuant to RCW 9.73.050. *Wanrow* is distinguishable here for two reasons. First, its holding pertains only to telephone recordings, whereas no telephone recording was offered into

evidence at Bonilla's trial. Second, the statute which the *Wanrow* court interpreted is now obsolete. Before 1977, former RCW 9.73.090(1)[1] allowed police and fire personnel to tape–record incoming emergency telephone calls without the consent of callers "for the purpose and only for the purpose of verifying the accuracy of reception of emergency calls." The *Wanrow* court interpreted the clause literally to preclude use of the recordings except for verification purposes. *State v. Wanrow, supra* at 232–33. The legislature, however, undercut that interpretation by deleting the verification clause and revising the chapter to remove the bar against recordings obtained from emergency fire and police telephone lines.[2]

These 1977 amendments effectively have nullified *Wanrow* with respect to RCW 9.73. They indicate the legislature's intention that emergency calls to police and fire stations be exempt from the wiretapping laws. *See State v. Forrester, supra* at 862 n.3.

As his second assignment of error, Bonilla claims the trial court denied him due process when it refused to grant his

_____

[1]Former RCW 9.73.090(1) provided:

"The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police and fire personnel in the following instances:

"(1) Recording incoming telephone calls to police and fire stations for the purpose and only for the purpose of verifying the accuracy of reception of emergency calls."

[2]RCW 9.73.030(2), added in 1977, provides in part:

"(2) Notwithstanding the provisions of subsection (1) of this section, wire communications or conversations (a) of an emergency nature, such as the reporting of a fire, crime, or other disaster, . . . may be recorded with the consent of one party to the conversation."

In a similar vein, RCW 9.73.090, as amended in 1977, provides in part:

"(1) The provisions of RCW 9.73.030 through 9.73.080 shall not apply to police and fire personnel in the following instances:

"(a) Recording incoming telephone calls to police and fire stations;

". . .

"(3) Communications or conversations authorized to be intercepted, recorded, or disclosed by this section shall not be inadmissible under RCW 9.73.050 [the general exclusionary rule]."

motion for a change of venue based on allegedly prejudicial pretrial publicity. The record does not support his claim.

■ Due process requires a trial court to grant a motion for a change of venue where a probability of prejudice is shown. The trial court's decision on such a motion will not be disturbed absent an abuse of discretion. *State v. Bonner,* 21 Wn. App. 783, 788, 587 P.2d 580 (1978); *State v. Haynes,* 16 Wn. App. 778, 781–82, 559 P.2d 583 (1977); *State v. Crudup,* 11 Wn. App. 583, 586, 524 P.2d 479 (1974). In reviewing the trial court's decision, appellate courts use nine criteria.[3] *State v. Bonner, supra* at 788; *State v. Haynes, supra* at 782; *State v. Haugland,* 14 Wn. App. 853, 858, 545 P.2d 1237 (1976); *State v. Hanson,* 14 Wn. App. 625, 631, 544 P.2d 119 (1975); *State v. Lee,* 13 Wn. App. 900, 905–06, 538 P.2d 538 (1975); *State v. Crudup, supra* at 587.

The court cannot review Bonilla's allegations of probable prejudice to the jury members because the record lacks a transcript of the voir dire proceedings, *State v. Hanson, supra* at 631, as well as any evidence that government officials dealt improperly with the press, *State v. Stiltner,* 80 Wn.2d 47, 50–52, 491 P.2d 1043 (1971). The record we do have, however, contains news accounts which are factual, not inflammatory. The trial court noted that the articles

---

[3]These are the criteria generally used by courts in determining whether to grant a motion for a change of venue based on alleged prejudicial pretrial prejudice, as stated in *State v. Bonner,* 21 Wn. App. 783, 788, 587 P.2d 580 (1978):

> (1) the inflammatory or noninflammatory nature of the publicity; (2) the degree to which the publicity was circulated throughout the community; (3) the length of time elapsed from the dissemination of the publicity to the date of trial; (4) the care exercised and the difficulty encountered in the selection of the jury; (5) the familiarity of prospective or trial jurors with the publicity and the resultant effect upon them; (6) the challenges exercised by the defendant in selecting the jury, both peremptory and for cause; (7) the connection of government officials with the release of publicity; (8) the severity of the charge; and (9) the size of the area from which the venire is drawn.

comply with the bench–bar–press principles,[4] and it pointed out that "most of the information [in the news accounts] . . . the Court would normally tell the jurors before they start answering questions concerning their qualifications." Defense counsel himself stated during argument on the motion that

> for the purpose of today's motion we concede the fact that [the news accounts] are not, per se, inflammatory, nor do they contain any factual inaccuracies so far as counsel is able to determine.

We hold that there was no abuse of discretion in the trial court's denial of the motion for change of venue.[5]

We have reviewed the record carefully and find no violation either of the wiretapping laws or of Bonilla's due process rights. In simplest terms Bonilla voluntarily sought out the police, confessed and was convicted. On the facts presented, the law compels us to affirm.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied September 7, 1979.

---

[4]The full text of the bench–bar–press principles is set out in *State v. Butler,* 11 Wn. App. 605, 614, 524 P.2d 488 (1974).

[5]Bonilla has submitted the results of an informal poll taken 2 months before trial. The poll purports to prove that pretrial publicity poisoned public opinion against him to the point of destroying the presumption of innocence. Of the 43 persons questioned, 34 were aware of the murder, and 20 indicated they had formed an initial opinion that Bonilla was guilty. We believe the poll is inconclusive. Although an effort was made to select the pollees at random, there is an insufficient showing that the poll actually reflects a representative sample of community opinion. The value of the poll is diluted further by the fact it was taken 2 months before the trial, and because there is no evidence that an initial opinion of guilt later "could not have been or was not set aside in the event any of those people were called to serve upon the jury." *State v. Butler,* 11 Wn. App. 605, 613, 524 P.2d 488 (1974).